**JEFFERSON COUNTY SCHOOL DISTRICT R-1, Petitioner,**

v.

**Larry Gene JUSTUS, By and Through his Conservator and Father, J.D. JUSTUS, Respondent.**

No. 84SC158.

Supreme Court of Colorado,
En Banc.

Sept. 8, 1986.

Rehearing Denied Oct. 14, 1986.

Caplan & Earnest, Gerald A. Caplan, Alexander Halpern, Boulder, for petitioner.

Charles Welton & Associates, Charles Welton, Denver, for respondent.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nancy Connick, Asst. Atty. Gen., Cheryl M. Karstaedt, Denver, amicus curiae.

The Colorado Ass'n of School Boards, Lauren B. Kingsbery, Denver, amicus curiae.

Colorado Trial Lawyers Ass'n, Gerald P. McDermott, Denver, amicus curiae.

ROVIRA, Justice.

We granted certiorari to review the court of appeals decision in *Justus v. Jefferson County School District R-1*, 683 P.2d 805 (Colo.App.1984), on the issue of whether the court of appeals erred in holding that the petitioner, Jefferson County School District, had assumed the duty of preventing certain students from leaving school grounds on bicycles. We now affirm in part, reverse in part, and remand with directions.

### I.

Respondent, Larry Gene Justus, brought an action against petitioner, the Jefferson County School District R-1 (the school district), and others for damages resulting from injuries suffered on October 23, 1980, when he was struck by an automobile while riding his bicycle home from Eiber Elementary School in Lakewood, Colorado. Respondent was a six-year-old first-grade student at the time of the accident. He usually traveled to and from school on a school district bus. On the day in question, however, he either missed his morning bus or did not realize that his bus was late, and rode his bicycle to school without his parents' knowledge. While returning home on his bicycle that afternoon, he was injured at an intersection more than three blocks from the school.

At the beginning of the school year, Eiber Elementary School distributed to parents a "Handbook of Rules and Regulations" which described the rules governing various aspects of school procedure, including bus use and bicycle use.[1] Parents were required to sign and return a form showing that they had received the handbook. Pertinent provisions of the handbook stated:

*Bicycle Safety:*

Adequate instruction to bicycle riders concerning signaling, riding on the right side of the street, and other vehicular traffic laws is primarily the responsibility of the parents. The privilege of riding a bicycle to school is given to students in grades 4, 5, and 6 and should be dependent on the child's adherence to safety practices. Bicycles are to be placed in the bicycle rack and locked while they are at school.

. . . .

*Bus Procedures:*

. . . .

Bus students are to stay back of the curb when the bus is approaching. They must walk when getting on or off the bus. They should report to the bus stop about *five minutes* before pick-up time. No student should appear at the bus stop to loiter around for twenty or thirty minutes. Know the time your child should be at the bus stop and see to it that he/she arrives at the bus stop near that time.

Students who do not plan to ride the bus on a particular day should bring notification to school from parent or guardian indicating that they will not be riding the bus.

Non-bus students are not allowed to ride the bus home to visit another student.

Only in *extreme babysitting emergencies* will non-bus students be allowed to ride the bus or for bus students to change buses.

The school principal also assigned teachers to patrol the front of the school at the close of the school day. In its brief before

---

1. Other provisions of the handbook discussed the school's attendance policies, parent-teacher conferences, parent visitation in classrooms, and lost and found procedures.

the court of appeals, the school district admitted to the following description by respondent of the teachers' functions:

The purpose of the teachers, variously stated, was to maintain general order, to watch for general discipline, and to be available to answer general questions. They were to watch to be sure that bus students got on buses and that the bicycle students left school in a safe fashion. The teachers did not specifically watch, regulate or attend to the use of bicycles by students. The teachers did not have their list of bus students or bus assignments with them.

Brief of the Appellee at 7 (quoting Appellant's Opening Brief at 4) (citations to record omitted).

Respondent claimed that the school district was negligent in failing to prevent him from riding his bicycle home from school. The trial court granted summary judgment in favor of the school district and ruled that the school district had no duty to protect students from foreseeable harm existing off school premises. The court also concluded that evidence contained in the pleadings and respondent's affidavits was insufficient to support a legitimate inference that the school district had assumed a duty to prevent petitioner from leaving school on a bicycle.

The court of appeals reversed the district court's order granting summary judgment. It pointed out various practices and procedures followed by Eiber Elementary School and held, on the basis of the regulations contained in the handbook and the placement of teachers in front of the school, that the district had assumed the duty to prevent certain students from leaving school grounds on a bicycle:

The school, by its rules and regulations, undertook to restrict those students who would be permitted to travel to and from school by bus or bicycle. It implemented these regulations by placing teachers on guard to enforce the regulations, and it informed the parents that the regulations were in force. The school was also aware of off-premises

dangers to students of plaintiff's age. It therefore assumed a duty to prevent a first grade student from leaving the grounds on a bicycle.

*Justus*, 683 P.2d at 807. Based on this conclusion, the court of appeals reversed the order of summary judgment and remanded the case for trial on three issues: (1) whether the duty it had found was breached; (2) whether such a breach, if found, was the cause of respondent's injuries; and (3) if so, a determination of damages. *Id.*

The school district contends that the court of appeals erred in concluding that, as a matter of law, it assumed a duty to prevent respondent from leaving the school grounds on a bicycle. It also argues that the trial court's entry of summary judgment was appropriate because the respondent introduced no evidence to show that he or his parents relied on the district to prevent him from leaving school on a bicycle. We address these contentions in the order stated.

## II.

Before a defendant may be found liable for negligent conduct, it must be established that the defendant owed a duty to the person injured. *Roessler v. O'Brien*, 119 Colo. 222, 226–27, 201 P.2d 901, 903 (1949); *Turner v. Grier*, 43 Colo.App. 395, 397, 608 P.2d 356, 358 (1979). Normally, whether or not a defendant owes a duty to a particular plaintiff and the scope of that duty are questions of law to be determined by the court. *See Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980). The determination of whether a duty of care exists in a particular situation involves weighty policy questions whose resolution requires consideration of a number of different factors. *See Turner v. Grier*, 43 Colo.App. at 397 n.1, 608 P.2d at 358 n. 1; *see also Wheeler v. County of Eagle*, 666 P.2d 559, 562 (Colo. 1983) (Rovira, J., dissenting) (quoting *Raymond v. Paradise Unified School District*, 218 Cal.App.2d 1, 31 Cal.Rptr. 847, 851–52 (1963)). Courts addressing these policy

considerations have concluded that the common law custodial duty of a school towards its students only requires a school district to protect children against the foreseeable negligence of third parties while the children are in its charge. *See, e.g., Pratt v. Robinson,* 39 N.Y.2d 554, 559–60, 349 N.E.2d 849, 852, 384 N.Y.S.2d 749, 752 (1976) (district not liable to student injured while crossing street several blocks from where she had been discharged by school bus); *Wright v. Arcade School District,* 230 Cal.App.2d 272, 40 Cal.Rptr. 812 (1964) (no duty to five-year-old injured while crossing street on his way to school); *see also Justus,* 683 P.2d at 807 ("Under most circumstances, there would be no duty as to the protection of the pupils off the school premises.") (citing *Turner v. Grier*).

However, in addition to those duties imposed by law solely on the basis of the relationship between parties, a separate and distinct body of law holds that a party may assume duties of care by voluntarily undertaking to render a service.[2] *See Lester v. Marshall,* 143 Colo. 189, 352 P.2d 786 (1960); *Wright v. Arcade School District,* 40 Cal.Rptr. at 814; Restatement (2d) of Torts § 323 (1965); *cf. Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955) ("[I]t is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner"). In *Lester v. Marshall* we held:

> Where a person represents by word or act that he has done or will do something

upon the performance of which he should realize that others will rely, he is liable for expectable harm caused by the reliance of others and his failure of performance, if his representation was negligently or intentionally false, or if without excuse he fails to perform.

143 Colo. at 197–98, 352 P.2d at 791 (quoting Seavey, *Reliance on Gratuitous Promises or Other Conduct,* 64 Harv.L. Rev. 913, 928 (1951)). The American Law Institute's Second Restatement of Torts sets out this same rule in somewhat different form:

> **§ 323. Negligent Performance of Undertaking to Render Services**
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (2d) of Torts § 323 (1965). This rule is simply a corollary of section 324A of the Restatement which we adopted in *DeCaire v. Public Service Co.,* 173 Colo. 402, 408, 479 P.2d 964, 967 (1971). *See* Restatement (2d) of Torts § 324A comment a. That section, which deals with liability to third parties for the negligent performance of an undertaking, closely parallels the standard set forth in section 323.[3] *Id.*

---

**2.** During the 1986 legislative session, the general assembly passed two provisions which substantially modify the law governing the assumption of a duty of care for acts, omissions, and injuries occurring on or after July 1, 1986. S.B. No. 76 modifies the statutory sections on courts and court procedure, Title 13, 6 C.R.S. (1973 & 1985 Supp.), by adding a new section which limits the actions which can constitute an assumption of duty. Ch. 110, secs. 1–3, § 13–21–116, 1986 Colo. Sess. Laws 685, 685–86. H.B. No. 1196 modifies the Colorado Governmental Immunity Act, §§ 24–10–101 to –118, 10 C.R.S. (1982 & 1985 Supp.), by limiting the liability of public entities under an assumed duty theory. Ch.

166, secs. 6, 18, § 24–10–106.5, 1986 Colo. Sess. Laws 873, 876–77, 882.

**3.** Section 324A provides:

> **§ 324A. Liability to Third Person for Negligent Performance of Undertaking**
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or

Under the "assumed duty" or "good samaritan" doctrine set forth in *Lester v. Marshall* and section 323, the question of whether the school district assumed duties to the respondent over and above those owed as a matter of law is obviously not a purely legal question. Rather, it becomes a mixed question of law and fact, since any determination that a defendant has assumed a duty must be predicated on two factual findings. A plaintiff must first show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff.[4] *See, e.g., Williams v. Municipality of Anchorage,* 633 P.2d 248, 251 (Alaska 1981) (court, in reversing summary judgment, held that, "The precise nature and extent of [an assumed] duty, while a question of law, depends upon the nature and extent of the act undertaken, a question of fact."); *Erickson v. Lavielle,* 368 N.W.2d 624, 627 (S.D.1985) (although the existence of a duty is usually a legal question, summary judgment reversed on ground that assumption of duty is also based on the factual question of whether the defendant undertook to render assistance, which is a jury question); *Parker v. Thyssen Mining Construction, Inc.,* 428 So.2d 615, 618 (Ala.1983) (although "the existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances," summary judgment affirmed on basis that plaintiff introduced no evidence on some of the elements crucial to his cause of action). Second, a plaintiff must also show either that he relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk. *See, e.g., Patentas v. United States,* 687 F.2d 707, 715–16 (3d Cir.1982) (action against United States for negligent inspection by Coast Guard dismissed for failure to state claims under either increased risk or detrimental reliance theories of good samaritan liability under Restatement § 324A); *Nallan v. Helmsley-*

---

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

**4.** There remains a question in many jurisdictions as to whether the Restatement rule applies to both nonfeasance, a complete omission or failure to perform, and misfeasance, a negligent performance. Some courts have held that proof of reliance or increased risk is necessary only where the case is one of nonfeasance. *See Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 770–71 (Ind. App.1986); *Chisolm v. Stevens,* 47 Ill.App.3d 999, 7 Ill.Dec. 795, 800–801, 365 N.E.2d 80, 85–86 (1977) (by implication). Conversely, the authors of the Restatement state unequivocally that § 323 applies to all cases of misfeasance, *see* Restatement (2d) of Torts § 323 comment a ("This section ... applies whether the harm ... results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it."), but leave open the question of "whether a mere promise, without in any way entering upon performance, is an undertaking sufficient to make the promiser liable under the rule stated in this Section," *id.* at comment d. However, while the difference between misfeasance and nonfeasance is fairly clear in theory, courts have found the line between the two far from easy to draw, and the distinction has had a steadily decreasing significance in practice. *See* W. Prosser and W. Keeton, *The Law of Torts* § 56 at 374, 379 (5th ed. 1984); *Brown v. McPherson's, Inc.,* 86 Wash.2d 293, 545 P.2d 13, 18 (1975) (citing 4th ed. of Prosser); *see also* Restatement (2d) of Torts § 323 comment d ("The modern law has ... witnessed a considerable weakening and blurring of the distinction [between misfeasance and nonfeasance], in situations where the plaintiff's reliance upon the defendant's promise has resulted in harm to him."). We believe that the reference in *Lester v. Marshall* to representation "by word or act" that something has been or will be done, 143 Colo. at 197, 352 P.2d at 791, makes it clear that in Colorado the terms of § 323 apply to nonfeasance as well as misfeasance. Moreover, we are not persuaded that the distinction between misfeasance and nonfeasance warrants adoption of two *different* standards for assumption of duty, *see LaMoureaux v. Totem Ocean Express, Inc.,* 651 P.2d 839, 840 n. 4 (Alaska 1982), and therefore follow the majority rule requiring either reliance or increased risk for both. *See* Prosser and Keeton, *Law of Torts* § 56 at 381 ("In most cases finding liability [for assumed duties], the defendant has made the situation worse, either by increasing the danger, by misleading the plaintiff into the belief that it has been removed, or by depriving him of the possibility of help from other sources.") (footnote omitted).

*Spear, Inc.,* 50 N.Y.2d 507, 522, 407 N.E.2d 451, 460, 429 N.Y.S.2d 606, 615–16 (1980) (negligence based on assumption of duty to provide office building security would require a showing (1) that defendant undertook to provide the security service, (2) that it provided the service negligently, and (3) either that its conduct in undertaking the service placed plaintiff in a more vulnerable position than he would have been had defendant taken no action at all or that it was reasonably foreseeable that members of the public would rely on defendant's protective services).

· Our recognition of the dual nature of the "assumed duty" question makes it clear that the court of appeals was correct in concluding that summary judgment for the defendants was improper. Summary judgment is a drastic remedy which is never warranted except on a clear showing that there is no genuine issue of material fact. *See, e.g., Jones v. Dressel,* 623 P.2d 370 (Colo.1981); C.R.C.P. 56(c).

■ On the basis of respondent's complaint, the statement of the facts set forth in his trial court brief, and his affidavits opposing the district's motion for summary judgment, we conclude that respondent has raised a genuine issue as to whether by distributing the handbook and by placing teachers at the front of the school, the school district undertook the task of enforcing a rule that students in the lower grades were not eligible to ride bicycles to and from school. Where, as here, a plaintiff presents some evidence of an affirmative act or promise to act sufficient to create an inference that the defendant undertook a service that would have prevented plaintiff's injuries, that factual question precludes summary judgment on the issue of whether the defendant undertook such a service. *See, e.g., Williams v. Municipality of Anchorage,* 633 P.2d at 251–52; *Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 770 (Ind.App.1986); *Cooperwood v. Auld,* 175 Ga.App. 694, 334 S.E.2d 22, 23 (1985); *Mas-*

*singale v. Sibley,* 449 So.2d 98, 101 (La. App.1984).

■ However, since a determination that the school district has assumed a duty must be based on certain factual findings, *Williams v. Anchorage; Erickson v. Lavielle; Parker v. Thyssen Mining Construction,* the conclusion by the court of appeals that the district "assumed a duty to prevent a first-grade student from leaving the school grounds on a bicycle," 683 P.2d at 807, is clearly premature at this stage of the proceedings. There has, as yet, been no finding that, through the affirmative acts of distributing the handbook and placing teachers in front of the school, the school district undertook the task of preventing respondent from leaving school on his bicycle. Nor has it been found that the respondent relied on, or had his risk of harm increased by, the school district's undertaking. Under *Lester v. Marshall* and the Restatement rule, a conclusion that a defendant has assumed a duty is only appropriate where both of these findings are made, either by the court under standards appropriate for summary judgment, *see Jones v. Dressel;* C.R.C.P. 56, or by the jury where plaintiff introduces sufficient evidence to raise a genuine issue of fact, *see, e.g., Erickson v. Lavielle,* 368 N.W.2d at 627 (whether defendant undertook to render assistance is a question for the jury); *Ember v. B.F.D.,* 490 N.E.2d at 770 ("the actor's affirmative conduct and representations must be evaluated by a jury to determine whether a duty was gratuitously assumed."); *Panitz v. Orenge,* 10 Wash. App. 317, 518 P.2d 726, 728 (1973). We therefore conclude that the court of appeals erred in holding that the district "assumed a duty to prevent a first grade student from leaving the [school] grounds on a bicycle," *Justus,* 638 P.2d at 807, and remand for further proceedings including a determination of what service, if any, the district had undertaken when it placed teachers in front of the school at the end of the day.[5]

5. We note that the scope of any assumed duty found on remand must be limited to the per-

formance with due care of that service undertaken, because the school district's liability un-

## III.

The school district also contends that even if the facts support a conclusion that it undertook the service of preventing first graders from leaving school on bicycles, summary judgment was appropriate here because the respondent has not shown that either he or his parents relied on any undertaking by the school to enforce the bicycle rules. The school district, however, did not raise this argument as grounds for summary judgment in the district court. Rather, this contention was addressed for the first time in the briefs before this court.

The party moving for summary judgment has the burden of demonstrating clearly the absence of a genuine issue of fact in order to prevail. *Ginter v. Palmer & Co.,* 196 Colo. 203, 206, 585 P.2d 583, 584 (1978). As the school district did not raise nonreliance as grounds for summary judgment before the trial court, it did not meet its burden of showing that respondent did not rely and did not put the respondent on notice of the need to show reliance at that early stage in the proceedings. Thus, while the respondent must ultimately prove reliance or increased risk in order to recover under an assumed duty theory, *Lester v. Marshall;* Restatement (2d) of Torts § 323, nonreliance cannot serve as a ground for reinstating the trial court's entry of summary judgment under the motion before us here.[6]

The judgment of the court of appeals is affirmed with regard to the reversal of summary judgment, reversed as to the holding that defendant assumed a duty as a matter of law, and the case is remanded for further proceedings consistent with this opinion.

VOLLACK, J., does not participate.

der a voluntarily assumed duty can obviously be no broader than the undertaking actually assumed. *See Board of Comm'rs of Monroe County v. Hatton,* 427 N.E.2d 696, 699–700 (Ind.App. 1981) (any assumption of duty to trim weeds in order to prevent obstruction of view from roadway was limited to the extent to which weeds had been trimmed in the past); *Ainey v. Realto Amusement Co.,* 135 Wash. 56, 236 P. 801, 802 (1925) (undertaking to remove snow on front sidewalk did not constitute assumption of duty to remove snow from sidewalk in side alley); *cf. Patentas v. United States,* 687 F.2d 707, 716 (3d Cir.1982) ("the scope of a good samaritan's duty is measured by the scope of his or her undertaking" ); *Pratt v. Robinson,* 39 N.Y.2d at 564, 349 N.E.2d at 855, 384 N.Y.S.2d at 755 ("[T]o the extent, but only to the extent, a school district decides to provide busing, it must operate it with due care."); *Turner v. Grier,* 43 Colo.App. at 397, 608 P.2d at 358 (scope of duty must be determined in light of magnitude of burden of guarding against the injury). We recognize that placing the determination of the undertaking in the hands of the jury may create procedural difficulties in certain cases. Where, for example, the evidence supports a broad range of conceivable undertakings, special interrogatories, in addition to appropriately worded instructions on duty, might be necessary since the care that is due depends in part on the scope of a defendant's duty. In the case at bar, however, the issue of the scope of the school district's undertaking seems to be limited to the question of whether or not it encompassed the task of preventing respondent from leaving school on a bicycle. We believe that the limited factual question presented here can be addressed through an appropriately worded jury instruction.

6. We note, however, that since the question of reliance or increased risk is yet to be resolved, and since a defending party may move for summary judgment on an issue at any time, C.R.C.P. 56(b), nothing in this opinion precludes the school district from moving for summary judgment on the grounds of nonreliance once the cause has been remanded to the district court. Of course, if the school district so moves, respondent will have the opportunity to present evidence of reliance which, if sufficient to raise a genuine issue as to whether respondent or his parents relied on the school district's alleged undertaking, will preclude summary judgment.