The MAY DEPARTMENT STORES COMPANY, and May Centers, Inc., formerly the May Stores Shopping Center, Inc., Plaintiffs–Appellants and Cross–Appellees,

v.

UNIVERSITY HILLS, INC., Hutchinson Sales Corporation and SLP, Inc., Defendants–Appellees.

ALC CO., Defendant–Appellee and Third–Party Plaintiff–Cross–Appellant,

v.

MAY DESIGN AND CONSTRUCTION COMPANY, Third–Party Defendant and Cross–Appellee.

The MAY DEPARTMENT STORES COMPANY, and May Centers, Inc., formerly the May Stores Shopping Center, Inc., Plaintiffs,

v.

ALC CO., formerly known as Al Cohen Construction Company, Defendant–Appellant,

and

University Hills, Inc. and Hutchinson Sales Corporation, Defendants–Appellees.

Nos. 87CA1568, 87CA1808.

Colorado Court of Appeals, Div. III.

Aug. 31, 1989.

Rehearing Denied Sept. 28, 1989.

Certiorari Denied March 12, 1990.

White & Steele, P.C., Glendon L. Laird and Allan Singer, Denver, for plaintiffs-appellants and cross-appellees.

Weller, Friedrich, Ward & Andrew, Geoffrey S. Race and Debra K. Sutton, Denver, for defendant-appellee University Hills, Inc.

Parcel, Mauro, Hultin & Spaanstra, P.C., Paul F. Hultin and Janet F. Kabili, Denver, for third-party defendant and cross-appellee and plaintiffs May Design and Const. Co., The May Dept. Stores Co. and May Centers, Inc.

Holt & Associates, L. Tyrone Holt, Timothy Davis and Ellen K. Eggleston, Denver, for defendant-appellee SLP, Inc.

Downey & Gulley, P.C., Arthur H. Downey and Daniel W. Patterson, Denver, for defendant-appellee and third-party plaintiff-cross-appellant, and defendant-appellant ALC Co.

Pryor, Carney and Johnson, P.C., W. Randolph Barnhart and Scott S. Nixon, Englewood, for defendant-appellee Hutchinson Sales Corp.

Opinion by Judge CRISWELL.

These consolidated appeals result from litigation commenced by certain landowners and tenants, or their subrogated insurers, to recover damages sustained by them as a result of a fire that occurred at the University Hills Shopping Center (center) in Denver in November 1983. In that litigation, the plaintiffs here, The May Department Stores Co. and May Centers, Inc. (collectively May Co.), sought damages from the center's owner, University Hills, Inc. (University Hills), and its manager, Hutchinson Sales Corp. (Hutchinson), as well as from ALC Company (ALC), the general contractor who made certain physical improvements to the center, and Seracuse, Lawler & Partners, Inc. (SLP), who acted as the architect on that project. University Hills filed claims for contribution against ALC and SLP, seeking a judgment over against these two parties in the event May Co. recovered a judgment against it. ALC also sought contribution from University Hills on the claims being asserted against it by May Co., and from May Co. and an affiliated company, May Design and Construction Co., on the claims being asserted against ALC by various other tenants of the center, under the Uniform Contribution Among Tortfeasors Act, § 13–50.5–101, et seq., C.R.S. (1987 Repl. Vol. 6A).

Through a series of orders granting motions for summary judgment, the trial court dismissed all of the foregoing claims based on its conclusions that:

1. May Co.'s claims against University Hills and Hutchinson were barred by an exculpatory provision in a written lease between May Co. and University Hills;

2. ALC would, therefore, not be able to collect from University Hills on any part of the claims asserted by May Co. against it;

3. May Co.'s claims against ALC and SLP were barred by the applicable statute of repose, § 13–80–104, C.R.S. (1987 Repl. Vol. 6A), formerly § 13–80–127, C.R.S.; and

4. The claims asserted by ALC against May Co. could not be maintained because May Co. owed no duty of due care to other tenants.

May Co. and ALC appeal from the trial court's judgments dismissing their claims. We affirm those judgments.

In 1954, May Co. purchased a parcel of land from University Hills upon a portion of which it erected a free-standing retail department store. At the same time, University Hills constructed an "open air" shopping center on an adjacent parcel.

In 1975, University Hills desired to convert this open air center into a closed mall. To accomplish this purpose, it entered into an agreement with May Co., whereby May Co. agreed to lease back to University Hills, for a nominal lease payment, a portion of the ground previously purchased by it and authorized University Hills to attach the enclosing structure to its department store building. This agreement was evidenced by a contemporaneous letter agreement and a subsequent written lease.

To accomplish the enclosure, ALC was engaged by University Hills to design and construct the necessary improvements. ALC contracted to have SLP perform design and architectural services. Except for a final test of the sprinkler system, the construction of the improvement was completed so as to allow a public "grand open-

ing" of the newly designed mall on November 28, 1975.

In the early morning hours of November 23, 1983, a fire originated in the ceiling of a University Hills' tenant space that had been occupied prior to the 1975 construction. It spread among the adjoining stores, it is alleged, because of the absence of fire walls between them. In addition, while the fire itself did not spread into the May Co. store, smoke entered that store through the center's corridors and overhead ceilings, thereby damaging much of May Co.'s Christmas inventory.

## I.

### *May Co.'s claims against University Hills*

█ May Co.'s allegations directed against University Hills asserted that the improvements constructed to enclose the mall, which were attached to May Co.'s building, were constructed without providing adequate ventilation or fire walls, and as a result, the fire and smoke were allowed to travel rapidly through the enclosed roof portion of the structure. In addition, it asserted that University Hills had violated the lease agreement between it and May Co. by failing to maintain the leased premises in good condition and repair in that the condition of the premises allowed the spread of smoke from those premises to the May Co. property. Finally, May Co. asserted that University Hills had, in their lease agreement, agreed to indemnify May Co. against all damages or losses arising from University Hills' use of the leased premises.

The trial court held, however, that the lease's indemnification clause was inapplicable to the loss sustained by May Co. as a result of the fire and that that instrument's waiver of subrogation clause barred the assertion of any of these claims. We agree with the trial court's construction of the lease.

In the lease's prefatory and definitional provisions, the entire parcel owned by May Co. is referred to as the "Total Tract," and it is described as being *"in* University Hills

Shopping Center, Denver, Colorado (the 'Shopping Center')." (emphasis supplied) Further, the portion of the parcel to be leased to University Hills is designated as the "Tenant Tract," while the portion not leased, upon which May Co.'s store exists, is the "May Tract."

By section 11.1 of the lease, University Hills agrees to maintain a policy of insurance, which is to include fire and related coverage protection, for the improvements that were constructed upon the Tenant Tract. Then, Section 11.4, entitled "Waiver of Subrogation," provides that:

> "*Each* party hereby releases the *other* party from any liability for all losses and damages occasioned to the releasor's *property located within the Shopping Center,* which losses and damages are covered by the *type* of policies described in Section 11.1." (emphasis supplied)

In addition, Article 12 of this lease contains the following provision:

> "[University Hills] shall indemnify and hold [May Co.] harmless against all claims, damages, costs, expenses (including reasonable attorneys' fees and court costs) and liabilities (herein collectively called '*claims*') arising from or out of the death of or any accident, injury, *loss or damage whatsoever* caused to *any person* or to *any property* arising from [University Hills'] use of the Tenant Tract." (emphasis supplied)

Based on the language of these provisions, May Co. argues that it is "any person" and the May Tract is "any property" within the meaning of Article 12, so that the lease requires University Hills to hold May Co. harmless from any damage resulting to the May Tract from University Hills' use of the Tenant Tract. It maintains that the waiver provisions of section 11.4 do not apply to its claims against University Hills because that section is intended to apply only to claims based upon damage occurring to the Tenant Tract that are covered by the policy of insurance that Section 11.1 requires University Hills to obtain. Section 11.4, it argues, is not applicable to damages occurring on the May Tract. We disagree.

The provisions of this instrument, while recognizing that all of the May Co. property is "in" the center, distinguishes between the parcel being leased to University Hills and the parcel being retained by May Co. Thus, at the time that the lease agreement was executed there were three separate parcels of land that collectively comprised the center—the May Tract, the Tenant Tract, and the parcel owned by University Hills.

Section 11.4 required University Hills to obtain fire insurance to cover the Tenant Tract, but made no provision for similar insurance either for the May Tract or for the property owned by University Hills. Nevertheless, it caused *both* May Co. and University Hills to release the other party from any liability for damages occurring to the property of *either* that was "located within the shopping center," to the extent that such damages were covered by the "type" of policy that University Hills was to obtain for the Tenant Tract.

This language, in our view, expresses the parties' mutual intent to assure that there would be a specific insurance policy covering fire damage to the Tenant Tract, in which both parties had an interest, but that the responsibility for obtaining insurance to cover fire damage occurring to the parcel in which one of the parties had the sole interest would be left to that party. To the extent that any fire damage to those other two parcels was covered by the type of policy that was to cover the Tenant Tract, both parties intended that neither of them would look to the other for further recompense.

The parties specifically designated the parcel leased back to University Hills as the "Tenant Tract," and the lease is replete with instances in which this designation is used when the parties intended to refer to that parcel. Significantly, the pertinent language of Section 11.4 does not use this designation, but adopts a description that includes all three parcels comprising the center. To construe this broadened description to refer only to the Tenant Tract would do violence both to its plain language and to the internal consistency of

the lease instrument. Such a construction cannot be adopted. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978).

Provisions similar to Section 11.4 are not uncommon. And, when the language of the agreement discloses an intent to waive claims, the courts will enforce that agreement. *See Hartford Insurance Co. v. CMC Builders, Inc.,* 752 P.2d 590 (Colo. App.1988); *Steamboat Development Corp. v. Bacjac Industries, Inc.,* 701 P.2d 127 (Colo.App.1985). *Cf. United States Fidelity & Guaranty Co. v. Let's Frame It, Inc.,* 759 P.2d 819 (Colo.App.1988).

■ Likewise, we reject May Co.'s argument that the indemnity and hold harmless promise that University Hills gave to May Co. by Article 12 of their lease applies to the smoke damage claims that May Co. asserted in this case.

Generally, indemnity language similar to that employed by the parties here is construed to apply only to claims asserted by third parties against the indemnitee, not to claims based upon injuries or damages suffered directly by that party. *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 759 P.2d 757 (Colo.App.1988), *rev'd in part on other grounds,* 776 P.2d 362 (Colo.1989). Thus, the trial court, in interpreting this provision to be applicable only to third-party claims, followed the general rule.

Further, the language of Article 12 is limited to damage caused by University Hills' "use of the Tenant Tract." Even if it is assumed that this phrase would include damage resulting from faulty construction in some other portion of the center, this provision cannot be interpreted to apply to *all* claims that might accrue to May Co. To do so would render this provision inconsistent with Section 11.4. Article 12 cannot be interpreted to apply to the claims that May Co. waived under Section 11.4.

And, since we have concluded that Section 11.4 caused May Co. to waive the claims asserted by it against University Hills, University Hills had no duty to indemnify it for those claims. The trial court properly dismissed the claims asserted by

May Co. against University Hills and Hutchinson, its manager.

## II.

*May Co.'s claims against ALC and SLP*

■ The trial court dismissed the claims asserted by May Co. against ALC and SLP because it concluded that those claims had not been asserted within the time permitted by § 13–80–127, C.R.S. (since repealed and re-enacted in modified form as § 13–80–104, C.R.S. (1987 Repl. Vol. 6A)). May Co. asserts that the court's pretrial order of dismissal was erroneous because (1) there existed a genuine issue of material fact to be resolved by trial, and (2) in any event, its assertion of the claims against ALC and SLP should "relate back" to the time that it filed its original complaint or, at least, to the date that these two parties were joined in the litigation. We disagree.

Both at the time of the construction of the enclosing structure and on the date that May Co. instituted its action, § 13–80–127, C.R.S., required that an action against either an architect or a contractor be commenced in no event later than "ten years after the substantial completion of the improvement."

In this case, the "grand opening" of the enclosed mall took place on November 28, 1975, and May Co. filed no pleading asserting a claim against either ALC or SLP until June 30, 1986. Thus, if the structure was substantially completed by the former date and May Co.'s pleading cannot relate back to a date earlier than the latter date, its claims are barred by § 13–80–127. *See Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982).

We construe the term "substantial completion" as used in § 13–80–127 as requiring no greater state of "completion" of an improvement, at the most, than is required under § 38–22–109(4), C.R.S. (1982 Repl. Vol. 16A). This latter statute requires the filing of certain statements of mechanics' liens at a specified time "after the completion of the building, structure, or other improvement." And, a "trivial imperfection in or omission" from the work does not prevent the structure from being "complete." Section 38–22–109(7), C.R.S. (1982 Repl. Vol. 16A). *See Kaibab Lumber Co. v. Osburne*, 171 Colo. 49, 464 P.2d 294 (1970).

Here, May Co. itself affirmatively asserted in its second amended complaint that the structure had been substantially completed in November 1975. In addition, to support its motion for summary judgment, ALC referred to the deposition testimony that the improvement had been substantially completed around Thanksgiving of 1975 and to other information that showed that the structure had been occupied and a "grand opening" held in that month. No contradictory information was placed before the trial court before it granted ALC's motion.

In requesting the court to reconsider this ruling, however, May Co. asserted that "substantial completion may not have occurred until at least February of 1976." This allegation referred to various documents showing that certain subcontractors' one-year guarantees did not commence to run until December 15, 1975, and that the building department did not test the sprinkler system until February 1976 or issue a final permit until June of that year. No evidence as to the nature of any work done after November 1975 was submitted by May Co., however.

Under these circumstances, the trial court properly found that there was no true factual controversy as to whether the improvement was substantially completed by November 23, 1975. *See Norton v. Dartmouth Skis, Inc.*, 147 Colo. 436, 364 P.2d 866 (1961); *Pearson v. Sublette*, 730 P.2d 909 (Colo.App.1986). *See also Mountainwood Condominium Homeowners Ass'n v. Cal–Colorado*, 765 P.2d 1066 (Colo.App.1988).

We also conclude that the trial court correctly ruled that the allegations in May Co.'s second amended complaint did not relate back to an earlier date.

May Co.'s original complaint, filed in November 1984, named only University Hills and Hutchinson, but nevertheless asserted that its damages resulted, among other

things, from the negligent construction of the mall. In January 1985, University Hills filed a third-party complaint against ALC and SLP under C.R.C.P. 14(a), which also relied upon allegations of negligent construction.

Four months later, in April 1985, May Co. filed its first amended complaint. Without joining any additional parties, it added allegations that University Hills and Hutchinson were guilty of negligently maintaining the mall structure.

It was not, then, until June 30, 1986, that May Co. filed its second amended complaint in which it named ALC and SLP as defendants and asserted claims against them based upon their alleged negligent design and construction of the mall.

C.R.C.P. 15(c) is the only rule that speaks directly to the question of when an amended pleading shall "relate back" to one previously filed. It says:

"Whenever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment *changing the party* against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, *the party to be brought in by amendment:* (1) Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for *a mistake concerning the identity of the proper party*, the action would have been brought against him." (emphasis supplied)

Under this rule, the pleader must have been mistaken as to the identity of the party against whom the claim should have been asserted in order for the pleading to relate back. *Shepherd v. Wilhelm*, 41 Colo.App. 403, 591 P.2d 1039 (1978). And, while we are aware that some courts have held that a mere failure to name a proper party is a sufficient mistake under the fed-

eral counterpart to C.R.C.P. 15(c), *see Williams v. Avis Transport of Canada, Ltd.*, 57 F.R.D. 53 (D.Nev.1972), that construction has generally been rejected by the federal courts, *see Norton v. International Harvester Co.*, 627 F.2d 18 (7th Cir. 1980), and is inconsistent with our holding in *Shepherd, supra.* We adhere to the *Shepherd* rationale.

Further, while C.R.C.P. 14(a) provides that, when a defendant brings in a third-party defendant, the plaintiff may assert "any claim" arising out of the same transaction against such party, this rule is not intended to extend the time for the assertion of any claim. Such a claim may be considered to relate back only to the extent that the pleader's claim would have related back under C.R.C.P. 15(c) had it been the pleader who joined the new party. *See Walker v. Associated Press*, 160 Colo. 361, 417 P.2d 486 (1966).

Here, May Co.'s original complaint alleged that it was damaged as a result of the negligent design and construction of the mall structure. And, it was aware at that time that ALC was the contractor responsible for that design and construction; there existed no question of any mistaken identity. Under these circumstances, the pleading filed some 18 months later did not relate back to any earlier date. The trial court, therefore, properly held that the pertinent statute barred the claims asserted.

### III.

#### *ALC's claims*

■ ALC asserted claims for contribution both against University Hills and Hutchinson and against May Co. Its claim against University Hills and Hutchinson sought contribution should ALC be found liable to May Co. While the trial court dismissed these claims on other grounds, since we have concluded that that court properly dismissed the claims asserted by May Co. against ALC, these claims for contribution were also properly dismissed. *See Martinez v. Denver Transformer Sales & Service, Inc.*, 780 P.2d 49 (Colo. App.1989).

Therefore, we need only consider whether the trial court erred in dismissing the claims that ALC asserted against May Co. for contribution with respect to the claims asserted against ALC by other mall tenants or their subrogated insurers. And, we agree with the trial court that May Co., by retaining the right to approve the plans for the improvements, did not assume any duty of due care to any existing or future tenants of the center. Thus, we conclude that the court properly dismissed ALC's claim for contribution against May Co.

May Co.'s right to approve the plans for the mall enclosure was based upon two documents. The first is the original agreement between University Hills and May Co. for the purchase of the site upon which the May Co. building is situate. In that agreement, it was provided that both parties had the right to approve the plans for the "exterior construction" or the "major exterior alteration to any structure" to be erected on the property of the other. In the event that either party disapproved of the other's plans, the dispute was to be submitted for final resolution to binding arbitration.

The lease between University Hills and May Co. was actually executed after the enclosing structure was erected, and as a result, it contains no specific provision for May Co. to review the plans for this structure. However, in a preceding letter agreement, the parties agreed that University Hills was to "enclose the mall in accordance with approved final plans to be prepared" by SLP, which were to be submitted to May Co. for approval. This agreement then provided that:

"May [Co.] agrees to review said plans and approve or disapprove the same within seven (7) days from the date of receipt. You [University Hills] will thereafter diligently perform the approved construction with the least possible interference with [May Co.'s] store operations."

The deposition testimony of May Co. officials was that this right to approve the plans was granted to assure that any structure to be attached to the May Co. building would not place any load upon that building and that the aesthetics of the structure would be compatible with that building, although some questions were later raised with respect to certain safety features.

Relying upon the principles outlined in the Restatement (Second) of Torts § 323 and § 324A (1965), ALC asserts that May Co., by exercising the right to review the construction plans, assumed a duty to tenants of the center to exercise due care to assure that those plans complied with the applicable fire and building codes and otherwise provided for the construction of a safe structure. We disagree.

Restatement §§ 323 and 324A set forth the conditions under which a party who undertakes to render a service to another party, which service is necessary for the protection of that other party's person or things, will be held to be liable for a failure to exercise reasonable care, either to that other party (§ 323), or to a third person (§ 324A). The precepts contained within these two sections were approved, at least in general, in *Jefferson County School District R–1 v. Justus*, 725 P.2d 767 (Colo. 1986).

However, in order for a service provider to be rendered liable under either Restatement § 323 or § 324A, the service rendered must be "reasonably calculated to prevent the type of harm" that actually befalls the plaintiff. *Jefferson County School District R–1 v. Justus, supra.* In this respect, the retention of a contractual *right* should not be confused with the creation of a contractual *duty* to perform a service. *See Wheeler & Lewis v. Slifer*, 195 Colo. 291, 577 P.2d 1092 (1978) (architect not liable to injured workman for failure to exercise right to stop work on project).

Further, for purposes of liability under Restatement § 324A, it must be demonstrated that the services rendered either increased the risk of harm to the third party or consisted of the performance of a duty owed by the other party to the involved third party, or that the harm resulted from the third party's reliance upon the service renderer's performance. Yet, this record does not reflect how May Co.'s possession of this right of plan approval in-

creased the risk of harm to any existing or prospective tenant, or that University Hills or ALC failed to conduct their own review of the plans because of May Co.'s possession of its right of review, or that any tenant either knew of, or relied upon, May Co.'s review of the plans.

Likewise, the existence of a provision in the lease that was executed some four years after completion of the construction on the Tenant Tract requiring May Co.'s consent to any alteration to those improvements does not evidence sufficient control over that area to render May Co. liable for the past design or construction errors, if any, of ALC. *See Restatement, supra,* § 360.

This right, like the previous right created by the parties' letter agreement, was designed to serve the investment purposes of May Co.; it was not intended to impose upon May Co. the duty to exercise due care to protect future tenants of the center. *See Wheeler & Lewis v. Slifer, supra; Stewart v. Schmieder,* 376 So.2d 1046 (La. App.1979), *aff'd,* 386 So.2d 1351 (La.1980) (lessee's retention of right to approve plans of building created no duty of due care to injured workman).

In light of our disposition of ALC's assertions, we need not address May Co.'s argument that ALC's post-appeal settlement agreement with the other tenants bars the assertion of its claims against May Co. Likewise, we need not address any of the parties' other contentions.

Judgments affirmed.

PLANK and RULAND, JJ., concur.