24CA2193 McClaflin v Land Title 04-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2193
City and County of Denver District Court No. 22CV33638
Honorable J. Eric Elliff, Judge

Andy McClaflin, Jacob Hocker, and Laura Hocker,

Plaintiffs-Appellees,

v.

Land Title Exchange Corporation, a Colorado corporation, and Kacey Neer,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

Adams & Reese, LLP, Victoria E. Edwards, Highlands Ranch, Colorado, for
Plaintiffs-Appellees

Anderson Notarianni McMahon LLC, Kimberly A. Bruetsch, Denver, Colorado,
for Defendants-Appellants

¶ 1     Land Title Exchange Corporation (Land Title) and Kacey Neer (Neer) (collectively defendants) appeal the district court's judgment entered in favor of Andy McClaflin (Andy), Jacob Hocker (Jacob), and Laura Hocker (Laura) (collectively the plaintiffs).[1]  On appeal, defendants contend that the district court erred by (1) finding them negligent; (2) awarding damages to Andy based on a nonparty, Gina McClaflin (Gina), having assigned claims to Andy; and (3) awarding damages not attributable to the negligence.  We affirm.

## I.     Background

¶ 2     In 2016, Andy, Gina, Laura, and Jacob (collectively the couples) formed McHock Real Estate, LLC (McHock) to purchase an investment property in Breckenridge, Colorado (the Property).  The couples purchased the Property in 2017 and used it as a rental property for several years.  In April 2021, the Property was listed for sale, and soon after, McHock entered into a purchase and sale agreement.

---

[1] We refer to most individuals in this opinion by their first name as several individuals share the same last name.  We intend no disrespect by doing so.

¶ 3    The couples wanted to take advantage of what is known as a 1031 exchange, which allows individuals to defer capital gains from the sale of a property under 26 U.S.C. § 1031 of the Internal Revenue Code.  Andy's certified public accountant advised him that the couples should engage an exchange intermediary — also referred to as an exchange facilitator — to complete the transaction.

¶ 4    McHock and Land Title entered into an agreement in which Land Title would act as a qualified exchange facilitator.  While McHock was the seller of the Property, the couples decided that they wanted to dissolve the legal entity, split the proceeds from the sale of the Property, and purchase separate properties by couple.  The couples expressed their desire to complete separate 1031 exchanges to Neer, Land Title's representative.  Neer advised the couples that they would need to execute quitclaim deeds transferring the Property from McHock to their individual names before the sale and that she could help coordinate the deeds to that effect.

¶ 5    The sale closed in May 2021.  Shortly after, the couples realized that the quitclaim deeds were missing from the closing documents and later discovered that Neer had never prepared them;

thus, the sale closed in the name of McHock, not the couples' individual names.

¶ 6    Thereafter, Neer advised the couples that to comply with Internal Revenue Service (IRS) guidelines, they would need to purchase the new properties in McHock's name. Later, though, Neer advised the couples that "it shouldn't be a problem for [them] to purchase the replacement properties in [their] names rather than the LLC." On that same day, Andy's banker advised him that having the couples purchase replacement properties in their own names put the 1031 exchange at risk. Nonetheless, the couples proceeded to use the Property's sale proceeds to purchase replacement properties in their own names. The 1031 exchange ultimately failed and each couple was subject to a $121,410 tax liability.

¶ 7    In the interim, Andy and Gina divorced, and through their separation agreement, Gina agreed that Andy would be entitled to any damages he recovered as a result of litigation against Land Title and Neer. Plaintiffs filed this lawsuit against several defendants, asserting that Land Title and Neer negligently advised the couples regarding the sale of the Property and 1031 exchanges, and, as a

result, the couples were unable to defer the taxes from the sale.[2]

Plaintiffs asserted claims for breach of contract, promissory estoppel, unjust enrichment, negligence, professional negligence, breach of fiduciary duty, respondeat superior, and vicarious liability.

¶ 8    Following a bench trial, the district court entered judgment against plaintiffs on all their claims except for negligence, professional negligence, respondeat superior, and vicarious liability. The court determined that plaintiffs were thirty percent at fault, awarding Jacob and Laura $81,344.70 and Andy $81,344.70 against Neer and Land Title, jointly and severally. The district court awarded $20,114.21 and $16,824.79 in prejudgment interest to Jacob and Laura and to Andy, respectively. Plaintiffs were also awarded their costs in the amount of $52,221.43 and postjudgment interest in the amount of $23.84 per day starting November 1, 2024.

---

[2] Plaintiffs named other defendants, but Neer and Land Title were the only defendants remaining when judgment was entered.

## II. Negligence

¶ 9      Defendants contend that the district court erred by finding them negligent because they did not owe plaintiffs a duty of care and did not cause the 1031 exchange to fail.

### A. Standard of Review

¶ 10     We review a district court's judgment following a bench trial as a mixed question of law and fact. *See Fear v. GEICO Cas. Co.*, 2023 COA 31, ¶ 15, *aff'd on other grounds*, 2024 CO 77. We review legal conclusions de novo, *see id.*, but we review findings of facts for clear error, *see Cronk v. Bowers*, 2023 COA 68M, ¶ 12. A court's findings are clearly erroneous if there is no record support for such findings. *Id.*

### B. Analysis

¶ 11     To prevail on a negligence claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused the injury. *N.M. v. Trujillo*, 2017 CO 79, ¶ 23.

## 1. Duty of Care

¶ 12 Defendants first argue that the district court erred by finding that defendants assumed a duty of care to plaintiffs.

¶ 13 Generally, we review de novo a court's determination that a duty of care exists. *Blakesley v. BNSF Ry. Co.*, 2019 COA 119, ¶ 12. But the question of whether a party assumed a duty is a mixed question of law and fact because the court's legal determination is based on factual findings. *Jefferson Cnty. Sch. Dist. R-1 v. Justus*, 725 P.2d 767, 771 (Colo. 1986).

¶ 14 Whether a duty has been assumed is based on two factual findings: first, that the "defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff," and second, that the plaintiff "either . . . relied on the defendant to perform the service or . . . defendant's undertaking increased plaintiff's risk." *Id.*

¶ 15 The district court entered judgment against plaintiffs on their contractual claims because the contract to conduct the 1031 exchange was between McHock and Land Title, not the individuals. But the court reached a different conclusion with respect to the

negligence claims. It reasoned that the members of McHock relied on Neer's assurance that she was going to help execute the quitclaim deeds, but she did not, and then Land Title and Neer continued to provide advice to the individuals following the closing to try to salvage the 1031 exchange — advice that turned out to be incorrect. Because Neer was acting within the scope of her employment with Land Title, that entity in turn owed plaintiffs a legal duty of care.

¶ 16 Nonetheless, defendants argue that the court's conclusion is in error because (1) the court did not explain how the defendants owed duties to the individual members of McHock, and (2) defendants did not speak to Laura or Gina at all as part of the transaction. We disagree with their contentions.

¶ 17 First, the record supports that defendants affirmatively undertook the responsibility to advise plaintiffs as to how to comply with the 1031 exchange if the couples wanted to receive the proceeds of the sale individually and not through McHock. True, Land Title's contractual relationship was with McHock, but defendants were aware that the couples wanted to dissolve McHock and receive the proceeds in their individual capacities, and Neer

7

specifically volunteered to prepare the quitclaim deeds for the couples, asking that the couples provide information on how the individual names should be reflected on the documents. That advice was for the benefit of the couples, not McHock.

¶ 18    Then, as the district court reasoned, defendants affirmatively assumed a legal duty to prevent the 1031 exchange from failing after it was discovered by the couples that McHock was the seller of the Property, not the individual couples. While defendants argue that it is unclear when defendants' duty shifted from advising McHock to advising plaintiffs, emails between Neer and Andy and Jacob from May 24-26, 2024 support defendants' affirmative advice to the couples. Specifically, those emails support a finding that Neer was aware of the couples' intent to conduct the sale through their individual names, not McHock, so that the couples could purchase separate properties.

¶ 19    Second, we reject the argument that because defendants did not speak directly to Laura or Gina, they had not assumed a duty to the spouses as well. Although Jacob and Andy were primarily corresponding with Neer, the emails reflected that Land Title was advising the two men with Jacob's wife, Laura, and Andy's ex-wife,

8

Gina, in mind. Specifically, Jacob wrote that "Jacob and Laura will be doing their own thing" with their half of the proceeds when he emailed Neer questioning why the closing paperwork was in the name of McHock.

¶ 20 Likewise, when Neer responded to another email from Jacob, she forwarded him an email chain between her and Andy in which she acknowledged she was aware that "[Andy] did specify how [Andy] and Gina wanted [their] names to read" in the quitclaim deeds and she apologized that this instruction "was missed and that a quit claim wasn't discussed with your closing team."

¶ 21 Therefore, while it is true that Laura and Gina never had direct discussions with representatives at Land Title or Neer, the record supports that Neer was advising the husbands along with their spouses, with the same legal advice that was intended to benefit Laura and Gina in the same manner, thus extending any assumed duty owed to Jacob and Andy to their spouses.

¶ 22 Based on this evidence, we cannot say the district court erred by holding that defendants owed the individuals a legal duty because they were aware that Laura's and Gina's interests would be affected by the transaction and thereby "undertook to render a

service that was reasonably calculated to prevent the type of harm that befell [Laura and Gina]." *Justus*, 725 P.2d at 771.

¶ 23 Likewise, plaintiffs relied on defendants to advise them with regard to executing 1031 exchanges in their individual names, knowing that if they gave plaintiffs incorrect advice, the 1031 exchange had an increased risk of failing.

¶ 24 Therefore, we conclude that the district court did not err by finding that defendants assumed a duty of care to plaintiffs.

## 2. Causation

¶ 25 Defendants further argue that the district court erred by finding that defendants were the cause of the 1031 exchange failing.

¶ 26 "Causation is a question of fact for the [fact finder] unless the facts are undisputed and reasonable minds could draw but one inference from them." *Wagner v. Planned Parenthood Fed'n of Am., Inc.*, 2019 COA 26, ¶ 18 (quoting *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985-96 (Colo. App. 2011)), *aff'd*, 2020 CO 51.

¶ 27 A plaintiff must establish that the defendant's breach caused the injury by demonstrating both "cause in fact" and "proximate cause." *Garcia v. Colo. Cab Co.*, 2023 CO 56, ¶ 20 (quoting *Rocky*

10

*Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 27).
Cause in fact considers whether, "but for the alleged negligence, the
harm would not have occurred." *Id.* (quoting *Rocky Mountain
Planned Parenthood*, ¶ 28). Cause in fact is satisfied "if the
negligent conduct in a 'natural and continued sequence, unbroken
by any efficient, intervening cause, produce[s] the result complained
of, and without which that result would not have occurred.'" *Deines
v. Atlas Energy Servs., LLC*, 2021 COA 24, ¶ 12 (quoting *Smith v.
State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)).
Proximate cause is proved if a plaintiff can establish that the
resulting harm was a foreseeable result of the defendant's action.
*Id.*

¶ 28    Looking first at cause in fact, the record supports the district
court's finding that the 1031 exchange ultimately failed because
plaintiffs acted on defendants' advice to purchase properties in their
individual names. Both parties' experts testified that the primary
reason for the failure of the 1031 exchange was plaintiffs' decision
to purchase the replacement properties in their individual names.

¶ 29    And both experts testified that the 1031 exchange could have
been saved if the couples had done a "swap and drop" by

11

purchasing a replacement property in the name of the LLC, holding onto it for a few years, and then deeding the property from McHock to the individual parties. We acknowledge that Neer initially provided plaintiffs with this advice when she and Jacob corresponded through emails. But after speaking with another Land Title employee about additional options, Jacob rejected Neer's initial advice. Neer then confirmed that plaintiffs' preferred course of action to purchase properties in their individual names "shouldn't be a problem." It was the unbroken chain of advice received from Neer and another Land Title employee that led to the couples' purchasing properties in their individual names and that ultimately caused the 1031 exchange to fail.

¶ 30     Defendants assert that "plaintiffs were required to prove they otherwise met the criteria for the exchange in order to satisfy the element of causation." Defendants offer several hypotheticals as to why the 1031 exchange would never have been successful. The court discounted that the couples held the Property for sale or personal use, as the evidence showed that the couples used the Property for many years as a vacation investment property. Therefore, we disagree with defendants that the record necessarily

12

establishes that the 1031 exchange would not have been successful, even without Neer's original error with the quitclaim deeds and subsequent advice. *See Gagne v. Gagne*, 2019 COA 42, ¶ 17 ("[W]e review any challenges to the court's underlying factual findings for clear error.").

¶ 31     Turning to proximate cause, Neer's trial testimony supports that she knew there was a risk of the 1031 exchange failing if the couples purchased replacement properties in their own names — as she advised them to do. We acknowledge that there was evidence that Andy had received contrary advice from his banker, which could suggest that Land Title and Neer might not have proximately caused the injury. But, as discussed above, the record also supports that the couples received advice from another Land Title employee, which was confirmed by Neer, to proceed in the manner preferred by the couples, making it foreseeable that the couples would take the advice, given that they had contracted with Land Title, Land Title was attempting to salvage the deal, and the parties wanted to proceed in a manner based on their preferred method if it meant the 1031 exchange could be successful. *See Dahl v. Young*, 862 P.2d 969, 971 (Colo. App. 1993) ("If there is sufficient evidence

13

in the record to sustain a trial court's findings, the reviewing court is bound by the trial court's determination, even though it is possible for reasonable persons to arrive at a different conclusion based on the same facts.").

¶ 32     Therefore, we conclude the district court did not err in its conclusion that defendants caused plaintiffs' injury.

### III.   Damages

¶ 33     Defendants contend that the district court erred by (1) awarding damages to Andy on behalf of Gina, as Gina was a nonparty; and (2) improperly awarding damages not attributable to the alleged negligence.

### A.     Standard of Review and Applicable Law

¶ 34     We review the district court's damages award for clear error. *Sos v. Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 49.  The court's assessment of damages "will not be set aside unless it is manifestly and clearly erroneous."  *Kroesen v. Shenandoah Homeowners Ass'n, Inc.*, 2020 COA 31, ¶ 56 .

### B.     Damages to Nonparty

¶ 35     Defendants claim that Andy did not have standing to assert damages on behalf of Gina as a nonparty, and that, even if he had

standing, it was error for the court to award him damages for Gina's loss. We disagree with both contentions.

¶ 36   To begin, defendants did not raise this argument below. But we agree that because standing is a jurisdictional prerequisite, it can be raised at any point, even on appeal. *Anderson v. Suthers*, 2013 COA 148, ¶ 12.

¶ 37   To prove an individual has standing, a plaintiff must establish that (1) he suffered an *injury in fact*, and (2) his injury was to a legally protected interest. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 8; *see also Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977) (establishing the test for standing).

¶ 38   Defendants appear to concede that, if Gina had properly assigned her litigation claim to Andy, he would have standing to pursue Gina's claim. But they claim the document purporting to be Gina's assignment is invalid.

¶ 39   We review the validity of an assignment de novo. *Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.*, 2016 COA 176M, ¶ 47. To the extent that we review the question of division of marital property, we will defer to the district court's factual findings unless

there is a showing of abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 40    "Generally, Colorado law favors the assignability of claims." *McKenna v. Oliver*, 159 P.3d 697, 699 (Colo. App. 2006). And the right to receive money may be assigned. *SDI, Inc. v. Pivotal Parker Com., LLC*, 2014 CO 80, ¶ 21. "No specific formality is required to execute a valid assignment, but the intent to make an assignment must be clearly reflected in the plain language of the parties' agreements." *People v. Adams*, 243 P.3d 256, 263 (Colo. 2010).

¶ 41    The record supports the district court's finding that Andy was contractually entitled to receive Gina's share of the damages in this lawsuit. In January 2023, Andy and Gina entered into a "Memorandum of Understanding and Mediated Separation Agreement" (MOU) as part of their dissolution of marriage proceedings. With respect to Gina, the MOU states that "to the extent there is any further pursuit against the title company for what we believe was error, Andy may pursue this lawsuit if he so chooses" and "Gina does not wish to further pursue this matter." We conclude that this allowed Andy to recover Gina's share of the damages.

¶ 42　　The MOU further states that "damages recovered shall be solely [Andy's]" and "[Gina] agrees that any damages received by Andy shall be free and clear from any demands made by her." Defendants argue, without citing specific authority, that there is a difference between an assignment of interest in litigation and an assignment of a claim.

¶ 43　　Regardless, we must review the entire MOU to give effect to the parties' intent. *See Johnson-Linzy v. Conifer Care Cmtys. A, LLC*, 2020 COA 88, ¶ 24. The MOU also states, "It is our intent that the division of property specified in this Agreement shall be construed as a division of co-owned marital property pursuant to Section 1041 of the Internal Revenue Code of 1986, as amended from time to time . . . ." The MOU continues,

> During the pendency of mediation, we paid nearly $300,000 in cash assets from shared bank accounts to satisfy taxes due and owing to the [IRS] and the state. Due to the nature of Andy's business and in large part because he holds securities licenses, and has a profitable, reputable firm that neither of us wish to compromise or harm; and to avoid adverse actions against us, we agreed to make these payments resulting in the liquidation of nearly all our unencumbered marital cash, notwithstanding the cash held as collateral by IB/SBA.

17

With respect to the 1031 exchange, the MOU says,

> There was a lawsuit initiated by Andy and Gina along with the other couple, related to the 1031 exchange which is believed to have been mishandled thereby creat[ing] a large tax consequence for both couples. To avoid a tax lien which would adversely impact Andy's position as licensed wealth manager, we paid off the tax debt due and owing for the sale of Breckenridge. To the extent there is any further pursuit against the title company for what we believe was an error, Andy may pursue this lawsuit if he so chooses. If he does so, any legal and/or Court fees paid, and damages recovered shall be solely his.

We acknowledge that it does not appear that Gina was ever a plaintiff in this lawsuit. Even so, in reading these provisions together, we conclude that the plain language of the MOU unequivocally reflects that Gina intended to allow Andy to pursue this claim and recover the damages for any tax liability the couple paid together when they were married. *See In re Estate of Gadash*, 2017 COA 54, ¶¶ 40, 45-49 (finding that the parties' intent was unambiguous based on the plain language of the contract and enforcing the contract terms as written). Therefore, the assignment is valid.

¶ 44    Defendants further argue that even if the assignment is valid, there is no evidence in the record that would support a claim by Gina against defendants for negligence.  But we have already addressed above that the court did not err by finding defendants negligent, even if Gina did not have direct communications with Land Title or Neer.

¶ 45    Therefore, we conclude that the district court did not err in concluding that Gina had executed a valid assignment of her claims and her interest in damages to Andy and, therefore, Andy had standing to pursue this claim and obtain any award of damages resulting from a judgment.

## C.    Damages Amount

¶ 46    We conclude that the record supports the district court's assessment of damages.

¶ 47    The district court determined that the appropriate measure of damages "is the tax that the parties were required to pay as a result of the failed exchange."  And it further found that each couple's tax liability as a result of the failed exchange was $121,410.  The court entered judgment in favor of Jacob and Laura in the amount of $81,344.70 and another judgment in favor of Andy in the same

amount, which presumably reflected a reduction based on the court's finding that plaintiffs were thirty percent contributorily negligent.

¶ 48     Defendants do not challenge the measure of damages or the amount of the tax that plaintiffs were required to pay.  Rather, on appeal, they argue that the court should have deducted $36,503.01 from the damages awarded to Laura and Jacob because that couple did not reinvest a portion of the proceeds from the sale of the Property, as required by IRS regulations, so the couple would have been taxed on the capital gains of the uninvested portion.  Likewise, they contend that the damages amount should be reduced in half for Andy because Andy cannot recover damages on behalf of Gina. We are unpersuaded.

¶ 49     With respect to Laura and Jacob, it is true that defendants argued below that the couple did not comply with IRS regulations requiring the couple to reinvest the full amount of the proceeds of the Property into a new property.  Defendants argued below that for Laura and Jacob to receive the full benefit of the tax deferral, they would have needed to reinvest $930,000, but they purchased a

property valued at only $776,626, leaving $153,374 uninvested to which they would have been subject to a tax liability.

¶ 50 On appeal, defendants now specifically argue that the court should have reduced damages by $36,503.01 to reflect the amount of taxes the couple would have had to pay on the $153,374 that was not reinvested. At trial, although plaintiffs' expert testified about the amount of taxes Jacob and Laura might have owed on the uninvested amount, defendants never asked the court to reduce the damages by any specific amount reflecting a potential tax liability and, as a result, the court did not address that issue. Accordingly, we conclude that this argument is unpreserved and we may not address it. *See Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002) (In a civil case, "this court will not consider arguments not presented to the trial court.").

¶ 51 And as for their argument that Andy's award should be reduced by half because he cannot recover Gina's amount, we have already determined that Gina's assignment was valid, so their contention that damages should be reduced necessarily fails.

¶ 52 Therefore, we conclude that the court did not err in its assessment of damages.

## IV. Conclusion

¶ 53 We affirm the district court's judgment.

JUDGE HARRIS and JUDGE SCHOCK concur.