16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert A. POLITTE and Joan M. Politte,
Plaintiffs-Appellants/Cross-Appellees,
v.
MCDONALD'S CORPORATION, a Delaware corporation,
Defendant-Appellee/Cross-Appellant.
 Nos. 92-1278, 92-1270.
 United States Court of Appeals, Tenth Circuit.
 Jan. 24, 1994.
 
 Before BRORBY, HOLLOWAY and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 KELLY
 
 1
 Plaintiffs-appellants, the Polittes, appeal the district court's grant of summary judgment on their promissory estoppel and negligence claims in favor of Defendant-appellee McDonald's Corporation. The Polittes claim that McDonald's Corporation failed to make repairs necessary to prevent ongoing water damage to the Golden, Colorado McDonald's restaurant. Our jurisdiction arises under 28 U.S.C. 1291. Because we find no evidence of a promise by McDonald's to solve all water problems and no duty to do so, we affirm.
 
 
 2
 Our review is de novo and we apply the same legal standard used by the district court in evaluating the summary judgment motion, namely Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52, 254 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991).
 
 
 3
 A movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If a movant establishes its entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. See Anderson, 477 U.S. at 251. See also Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' ") (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). A movant is not required to provide evidence negating an opponent's claim. Celotex, 477 U.S. at 323.
 
 I. Choice of Law
 
 4
 We must determine which state law governs because the parties disagree and the district court did not resolve the issue in its order. See Mitchell v. State Farm Fire & Cas. Co., 902 F.2d 790, 792 (10th Cir.1990). McDonald's argues that the choice of law clauses in the lease and franchise agreement specify that Illinois law applies. These clauses, however, do not apply to non-contract claims such as promissory estoppel and negligence. Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir.1992); NCC Sunday Inserts, Inc. v. World Color Press, Inc., 759 F.Supp. 1004, 1011 n. 11 (S.D.N.Y.1991).
 
 
 5
 The law of the forum state controls in making the choice of law determination. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Colorado adopted the Restatement (Second) of Conflict of Laws for tort actions in Dworak v. Olson Const. Co., 551 P.2d 198, 199-200 (Colo.1976), and for contract actions in Wood Bros. Homes v. Walker Adjustment Bureau, 601 P.2d 1369, 1372 (Colo.1979) (en banc). While the Restatement does not express a promissory estoppel rule, in the absence of an agreement between the parties as to which law applies in contract claims not controlled by the lease or franchise agreement, we apply the "most significant relationship" test of Restatement (Second) of Conflict of Laws 188. See Wood Bros. Homes, 601 P.2d at 1372. Because the negotiations took place in Colorado, the restaurant is located in Colorado, and any obligations that may have arisen under promissory estoppel or due to negligence would be fulfilled in Colorado, Colorado law controls.
 
 II. Promissory Estoppel
 
 6
 Colorado adopted the Restatement (Second) Contracts 90(1) promissory estoppel rule in Vigoda v. Denver Urban Renewal Auth., 646 P.2d 900, 905 (Colo.1982) (en banc). While Colorado has not delineated how detailed a promise must be under 90, it, at least, requires a clear promise. Mead Associates, Inc. v. Antonsen, 677 P.2d 434, 436 (Colo.App.1984) (substantial evidence of specific promise); accord Kiely v. St. Germain, 670 P.2d 764, 766 (Colo.1983) (terms of "firm deal" memorialized in unsigned document); Vigoda, 646 P.2d at 904 (promise contained in prospectus).
 
 
 7
 The Polittes argue that McDonald's 1984 offer to permanently solve the parking lot problem was a promise to assume all liability arising as a result of both surface and ground water problems at the Golden restaurant. The summary judgment record simply does not support this assertion. McDonald's promise, memorialized in a July 13, 1984 letter to McDonald's encompasses repairs only to the parking lot. II Aplt.App. IX, tab 3, ex. 2. A review of correspondence from McDonald's to the Polittes likewise shows a promise to repair the parking lot but nowhere shows a broader promise to assume liability for all present or future water damage. II Aplt.App. IX, tab 1, ex. 8. Because we find no evidence of a promise by McDonald's to solve all water problems, summary judgment on this claim was appropriate. We need not reach the issue of whether the Polittes relied on McDonald's representations to their detriment. The Polittes' failure of proof concerning the promise, an essential element of their case, necessarily renders other facts immaterial. Celotex, 477 U.S. at 323.
 
 
 8
 This case does not concern the scope of an ill-defined promise; rather, it concerns two distinct promises, one made and one alleged to have been made. McDonald's made good on its promise to correct the "parking lot problem," and the Polittes do not suggest otherwise. The Polittes argue that the "parking lot problem" encompasses all of the "site problems" which probably result from an underground spring located either on or near the property. There simply is no evidence supporting the existence of this "second" promise.
 
 
 9
 The dissent contends we should not rely upon how the Polittes framed the promise in their complaint, because there may be another theory on which the Polittes may recover, perhaps with additional discovery. The problem with this approach is that it is inconsistent with summary judgment law--after an opportunity for discovery, the movants have a right to oppose the claims plead and to establish that the claims have no factual basis. See Celotex, 477 U.S. at 321; Anderson, 477 U.S. at 256-57; Matsushita, 475 U.S. at 586. An identification of the relevant substantive law is required, Anderson, 477 U.S. at 248, and that cannot be accomplished practically without reference to the complaint. Just as a movant is not required to produce evidence negating a plaintiff's claim, Celotex, 477 U.S. at 323, neither is a movant required to anticipate every foreseeable basis for a plaintiff's remedy and attempt to negate such anticipated bases. Plaintiffs are expected to plead with reference to the facts they have in their possession.
 
 
 10
 Mr. Politte's statements, taken out of context, do not create a genuine issue of a material fact because they are not significantly probative, see Anderson, 477 U.S. at 249, of the expanded duty the Polittes now claim was assumed by McDonald's. The Polittes had the burden of coming forward with such evidence under the relevant substantive law, given that McDonald's has claimed that they lack the evidence. See Celotex, 477 U.S. at 322-23. Summary judgment was thus proper.
 
 III. Negligence
 
 11
 The Polittes also based their negligence claim upon McDonald's undertaking of parking lot repairs in 1984. They claim that because McDonald's assumed a duty to repair the parking lot, it also assumed a duty to detect and resolve any possible underground water problems.
 
 
 12
 In Colorado, the question of whether a defendant has assumed a duty is a mixed question of fact and law. Jefferson County School Dist. R-1 v. Justus, 725 P.2d 767, 771 (Colo.1986) (en banc). In order to survive a motion for summary judgment, the plaintiff first must show that the defendant "undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff." Id. The scope of an assumed duty "can obviously be no broader than the undertaking actually assumed." Id. at 772-73 n. 5.
 
 
 13
 Again, the summary judgment record simply does not contain evidence which would support an assumption of a duty so broad as to include all water problems on the property for all time. See Jefferson County School Dist. R-1 v. Gilbert, 725 P.2d 774, 776-77 (Colo.1986) (en banc) (affidavit showing school district had crossing guards at one time insufficient to create an assumed duty). As evidence of the scope of duty, the Polittes offer various letters exchanged between them and McDonald's Corporation, depositions, and deposition exhibits. But this evidence does not suggest that McDonald's Corporation undertook a task any broader than repairs to the parking lot surface. In his deposition, Mr. Politte refers to the problem as "the Golden parking lot problem", (II Aplt.App. IX, tab 7 at 211), as did written correspondence with McDonald's in 1984. (II Aplt.App. IX, tab 3, ex. 2). McDonald's hired Giles Engineering as consultants after offering to repair the parking lot. Its report describes the scope of Giles' task as "determin[ing] the most probable cause of the pavement failure and provid[ing] remedial construction recommendations for the repair and/or reconstruction of the pavement to ensure a reasonable service life ... [and performing] a drainage analysis to help control surface water runoff from the adjacent properties...." (II Aplt.App. IX, tab 2, ex. 25). This evidence renders uncontroverted McDonald's claim that it merely undertook parking lot repairs. The Polittes have failed to show that a genuine issue of material fact exists concerning the scope of McDonald's undertaking. See Celotex, 477 U.S. at 323.
 
 
 14
 Second, the plaintiff must show "either that he relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk." Justus, 725 P.2d at 771. See also Restatement (Second) of Torts 323 ( cited in Justus, 725 P.2d at 770). We agree that Colorado imposes a duty to perform an assumed duty without negligence. DeCaire v. Public Serv. Co., 479 P.2d 964, 967 (Colo.1971). But in the context of a summary judgment motion, the Polittes must come forward with evidence which demonstrates a nexus between the 1984 repairs and current problems at the Golden restaurant. The Polittes must do more than merely assert negligence, they must proffer evidence that McDonald's or its agents negligently performed the 1984 parking lot repairs, causing damage. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied 113 S.Ct. 635 (1992). Here the Polittes do not offer any evidence of negligence, an essential part of their claim, thus their claim must fail. Celotex, 477 U.S. at 322.
 
 IV. Attorney's Fees
 
 15
 McDonald's cross-appealed the denial of its attorney's fees. We review the denial of attorney's fees for an abuse of discretion. TK-7 Corp. v. Barbouti, 993 F.2d 722, 736 (10th Cir.1993).
 
 
 16
 McDonald's claims the license provides for an award of attorney's fees in any action to enforce the contract rights. We need not decide whether the Polittes' action qualified as a contract enforcement action, however, because the License authorizes recovery "as may be allowed by the court...." (I Aplt.App. VII, tab A). Here McDonald's has failed to show any abuse of discretion by the court. Therefore we will not disturb its holding.
 
 
 17
 AFFIRMED.
 
 
 18
 HOLLOWAY, Circuit Judge, concurring in part in the result, and dissenting in part from the majority opinion:
 
 
 19
 I concur in the majority's result insofar as it affirms summary judgment for McDonald's on the Polittes' negligence claim.[2] I likewise concur in the court's holding that Colorado law governs this case, and in the rejection of McDonald's claim of error in the denial below of attorney's fees. With respect to the court's affirmance of summary judgment on plaintiffs' promissory estoppel claim, however, I respectfully dissent.
 
 
 20
 The majority opinion asserts that in order to withstand McDonald's motion for summary judgment below, the Polittes had to introduce evidence showing a promise by McDonald's to "assume all liability arising as a result of both surface and ground water problems at the Golden restaurant." Slip op. at 4. On the foregoing premise, the majority holds that the relevant evidence, as a matter of law, fails to support a finding of such a broad promise and that plaintiffs' promissory estoppel claim therefore was properly dismissed. Id. Because I believe the majority's basic premise is wrong, and because the record amply supports a narrower promissory estoppel claim for relief due to McDonald's failure to correct the parking lot problem, I cannot concur in affirmance of the summary judgment against the Polittes on that claim.
 
 
 21
 * In 1981, the Polittes entered into a 20-year franchise agreement with McDonald's to operate a McDonald's restaurant in Golden, Colorado. I Aplt.App. VIII, tab A. This controversy arose out of certain soil and water problems affecting the restaurant parking lot in the early years of the franchise, resulting in a purported promise by McDonald's in 1984 to cure the parking lot problems. Probably the most important evidence of a promise by McDonald's to deal with the Golden parking lot problems is correspondence in 1984 relating to these problems. This correspondence was introduced by McDonald's itself below in support of its motion for summary judgment. I Aplt.App. VIII, tab C, exs. 2, 3, 6, 11.
 
 
 22
 First, there is a June 26, 1984, letter from plaintiffs' attorney Hall to Mr. Politte concerning a conversation he had had with two McDonald's attorneys, Yastrow and Feldman, about the Golden lot problems. In relevant part, the letter states:
 
 
 23
 At your request, I contacted [McDonald's attorney] Shelby Yastrow regarding the Golden parking lot.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 I advised McDonald's that you wanted a permanent and not a temporary solution and, therefore, it is essential that the proposed corrective work be described and the cost determined so that you can make a judgment as to whether it will be a permanent solution. There is no sense in halfway measures. For example, replacing blacktop is only a temporary measure. The problem apparently is caused by expansive soil and moisture which combined cause the blacktop to buckle. It will be necessary to get rid of either the moisture or the expansive soil or both in order to come up with a permanent solution.
 
 
 27
 McDonald's agrees that the proposed corrective work should be defined and described and the cost determined; so they are in agreement with you on this issue. The only problem would be if there is a difference of opinion as to what work is necessary to achieve a permanent solution.
 
 
 28
 It was also agreed that we don't need to have lawyers involved any further and that the problem can be worked out between you and [McDonald's representative] Jacklow.
 
 
 29
 Id. ex. 11 (emphasis added).
 
 
 30
 With reference to the same conversation, Mr. Feldman, McDonald's attorney, wrote Mr. Politte on June 28, 1984, stating, in part:
 
 
 31
 Your attorney already spoke to Shelby Yastrow and me about the Golden lot problems this week. As I mentioned to Dick Hall, McDonald's is committed to undertaking all necessary action to correct the Golden lot problems. However, this has also been our prior position and you are aware of that. We have been willing to resolve the lot problems, regardless of who is at fault. Dick Jacklow gave you a proposal last September which, according to Dick, would have resolved all of the lot problems. However, you have never accepted Dick's proposal.
 
 
 32
 In any event, I advised Dick Hall of the following:
 
 
 33
 (1) Dick Jacklow will contact you in order to set up a meeting at your Golden restaurant. At the meeting, Dick Jacklow, Don Fowler and you will have the opportunity to fully discuss the Golden Lot problems and consider corrective actions deemed appropriate and necessary;
 
 
 34
 (2) McDonald's will then promptly undertake all necessary corrective action, without any cost to you, to correct the lot problems on a long-term solution basis. The expenses incurred by McDonald's will not be rolled into your base rent as previously proposed by Dick Jacklow; and
 
 
 35
 (3) While your attorney relayed your request that McDonald's reimburse you for all of your Golden lot repair expenses, we cannot agree to this. However, this is a separate issue that can be reconsidered at a later date and should not interfere with our willingness to promptly correct the lot problems at our expense. I would, however, be interested in reviewing your Golden lot repair bills, other than for normal lot maintenance, so that I can have a better understanding of the nature of the work undertaken and the amount of money involved.
 
 
 36
 Please understand, however, that by offering to correct the lot problem, we are not admitting any liability. To the contrary, we deny any liability and merely wish to quickly eliminate a long-standing problem which is adversely affecting your Golden restaurant operations.
 
 
 37
 Id. ex. 6 (emphasis added). In response, Mr. Politte wrote to Mr. Jacklow, a McDonald's representative, on July 12, 1984, agreeing to meet "to discuss/review the Golden lot/blacktop/drainage problems." Id. ex. 3.
 
 
 38
 On July 13, 1984, Mr. Hall, the Polittes' attorney, wrote to Mr. Yastrow to confirm a telephone conversation between them that day concerning settlement of a separate franchise dispute between the Polittes and McDonald's (the "Youngfield litigation") and other "thorn[s] in the side of one or the other of the parties [which] should be resolved as part of the [Youngfield] settlement." Id. ex. 2. The letter includes the following summary of the parties' understanding with respect to the Golden parking lot problem:
 
 
 39
 The Golden Parking Lot Problem. This has previously been discussed and I believe that the parties agree on the concept of what must be done, although it has not been determined and agreed specifically as to the actual construction work that must take place in order to solve the problem. At any rate, it has been agreed that the problem must be solved on a permanent basis, that a cosmetic or temporary solution is not sufficient. McDonald's has agreed, without acknowledging liability, that it will do whatever is necessary, at its sole cost and expense, to correct the Golden parking lot on a permanent basis, and if the corrective measures do not solve the problem on a permanent basis, McDonald's will take the responsibility in the future to do whatever is necessary to achieve a permanent solution.
 
 
 40
 Id. (emphasis added).
 
 
 41
 Mr. Politte met with McDonald's representatives Fowler and Jacklow to decide how to go about solving the Golden lot problems. I Aplt.App. VIII, tab C at 30, 32-35. In his deposition, Mr. Politte testified that Messrs. Jacklow and Fowler showed him "their plans which were to remove the expansive soil and the water from beneath the Golden parking lot and to fix the solution." Id. at 30. Those plans were allegedly based "on engineering reports that they had that they represented to [Mr. Politte] would permanently solve the problem at the Golden parking lot." Id. Mr. Politte described the plans as follows:
 
 
 42
 The work that was supposed to be done involved putting a French drain of some undetermined depth at what they said, quote, the engineering had recommended around the parking lot. It involved capping some springs I think in the hill at the northwest area that was causing problems. It involved taking up the expansive soil that was there which had been identified as a high content of expansive soil, and solving the French drain as I understood it was to be constructed in such a manner that it would remove water from the site so that there would be no water on the site physically to cause the expansive soil problems where the walls were moving and things were moving in the restaurant and outside on the parking lot. The most noticeable areas were in the parking lot obviously.
 
 
 43
 Id. at 32-33. Mr. Politte testified by deposition that "Mr. Feldman agreed to cause the proper repair and necessary repair to remove the water from the lot, the expansive soil problem, so that a permanent solution would be effected." II Aplt.App. XI, tab A at 27. McDonald's proceeded to spend approximately $60,000 on installation of a drainage system and other repairs to the Golden parking lot. I Aplt.App. III, 1/219. In connection with those repairs, the Polittes decided to invest $8,000 of their own money in order to upgrade to a concrete surface on part of the lot. I Aplt.App. VIII, tab C at 109 and ex.5.
 
 
 44
 Beginning in 1988, the Polittes began to experience renewed problems with cracking of the parking lot pavement, as well as other slab settlement and breakage problems. II Aplt.App. IX, tab 7 at 111, 130-31, 133, 147-48. While the cause of the renewed problems has not been definitively established, testing done by A.G. Wassenar & Associates at McDonald's request suggested to Mr. Wassenar that it might be caused by a lens of sandstone carrying a continuing flow of groundwater from uphill beyond the existing drain. Id. tab 8 at 15-17.
 
 
 45
 In response to the Polittes' complaints, McDonald's offered to make certain repairs on a no-warranty basis, placing full responsibility for all other repairs on the Polittes. Id. tab 1, ex.12. The Polittes rejected the offer as "superficial" and "not likely to solve the problem." I Aplt.App. VIII, tab C at 114, 126. Accordingly, on October 22, 1990, the Polittes filed this suit. I Aplt.App. I.
 
 
 46
 To me, the showing in the evidence is ample to raise a triable claim of promissory estoppel--representations in 1984 that McDonald's would do what was necessary at its expense to correct the Golden parking lot problem. In the context of the 20-year franchise agreement and the surrounding facts and circumstances, which should be considered, McDonald's promise was sufficiently specific under promissory estoppel principles. As explained below, that promise induced substantial reliance by the Polittes, including their contribution of some $8,862 in the parking lot repair efforts. The elements of a promissory claim clearly are made out sufficiently to survive a summary judgment motion and be heard at trial.
 
 II
 
 47
 With respect to the terms of the alleged promise made to them by McDonald's in 1984, the Polittes allege, inter alia, that "McDonald's agreed ... that it would do whatever was necessary, at its sole cost and expense, to correct the Golden McDonald's site problems on a permanent basis, and if the corrective measures did not solve the problem on a permanent basis, that McDonald's took responsibility in the future to do whatever is necessary to achieve a permanent solution (the 1984 Agreement')." I Aplt.App. VI 1/225. The Polittes further allege that they "relied on these representations and promises" to their detriment by, inter alia, contributing $8,000 for concrete pavement and by giving McDonald's a free hand in selecting and implementing the repairs and protective measures. Id. at 1/241.
 
 
 48
 In its summary judgment motion, McDonald's argued that the Polittes' promissory estoppel claim could not stand in the absence of evidence showing agreement between the parties as to the practical steps McDonald's should take in order to fulfill its purported promise. I Aplt.App. VIII, tab C at 25-27. The district court apparently agreed, granting McDonald's motion as to the promissory estoppel claim on the grounds that "there was no promise binding McDonald's to act." Appellant's Opening Brief, Att. at 10. This was the only basis given by the court below in rejecting the promissory estoppel claim.
 
 
 49
 As noted, the majority treats the Polittes' promissory estoppel claim as dependent on proof of nothing less than a promise by McDonald's to "assume all liability arising as a result of both surface and ground water problems at the Golden restaurant." Slip op. at 4. The majority concludes, and I agree, that the evidence in the record does not support such a broad promise by McDonald's. However, the majority opinion defines the promissory estoppel claim as one that can only be considered on the broad basis it posits, thus subjecting plaintiffs to a burden of proof they should not be required to meet.
 
 
 50
 A constrained and technical reading of the Polittes' complaint may appear to support the majority's definition of the relevant promise. However, the confines of the complaint do not control. Both the letter and spirit of the Federal Rules preclude the majority's construction of the allegations of the complaint. "Under the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties." Harbin v. Assurance Company of America, 308 F.2d 748, 750 (10th Cir.1962). Accordingly, "the pleadings are not determinative of the issues, and ... recovery may be had on grounds not asserted in the complaint." Id. As we stated long ago:
 
 
 51
 Particularization of the issues is indeed the first order of business. But the Rules do not contemplate their definition by paper pleadings. They are to be ascertained and articulated by the free use of controlled pre-trial discovery under the guiding hand of the judge who has the responsibility for the trial of the case.
 
 
 52
 New Home Appliance Center v. Thompson, 250 F.2d 881, 884 (10th Cir.1957).[3]
 
 
 53
 The nature and extent of the promise that the plaintiffs must prove on their promissory estoppel claim are not set in concrete by the complaint's averments. It is necessary to consider the relevant facts uncovered in discovery and decide whether those facts support a claim for promissory estoppel against McDonald's. "[I]f an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate." Stevens v. Barnard, 512 F.2d 876, 878 (10th Cir.1975). Accord Coichman v. City of Aspen, 859 F.2d 1466, 1467 (10th Cir.1988) ("in examining the factual setting in which legal questions arise, we construe the pleadings and the evidence liberally in favor of the party opposing summary judgment"). To the extent the contents of the complaint are relevant to determining the nature of the relevant promise, "the court must liberally construe all of the non-movant's allegations and the movant must clearly demonstrate his entitlement to summary judgment." Cayce v. Carter Oil Co., 618 F.2d 669, 672-73 (10th Cir.1980). Accord Stevens, 512 F.2d at 878 (same); see also Clyde v. Broderick, 144 F.2d 348, 350 (10th Cir.1944) ("[a]ll doubts and ambiguities concerning the meaning and intentions of the pleader's language must be resolved in favor of the claim attempted to be stated"); Economy Housing Co. v. Continental Forest Products, 757 F.2d 200 (8th Cir.1985) (complaint alleging breach of implied warranty does not preclude potential express warranty claim); Fed.R.Civ.P., Rule 8(f) ("[a]ll pleadings shall be so construed as to do substantial justice"). "[N]otice pleading does not require that every possible interpretation of the facts be spelled out in the complaint." Toth v. USC Corp., 883 F.2d 1297, 1300 (7th Cir.1989).
 
 III
 A.
 
 54
 Regardless of how the Polittes may have alleged the scope of McDonald's promise in their complaint, the showing made in the summary judgment record supports their claim of promissory estoppel sufficiently to survive the summary judgment motion. The 1984 correspondence and Mr. Politte's deposition testimony furnish ample proof of their claim that McDonald's promised to "do whatever is necessary, at its sole cost and expense, to correct the Golden parking lot problem on a permanent basis[.]" I Aplt.App. VIII, tab C, ex. 2. In fact, the majority opinion states:
 
 
 55
 McDonald's promise, memorialized in a July 13, 1984, letter to McDonald's encompasses repairs only to the parking lot.... A review of correspondence from McDonald's to the Polittes likewise shows a promise to repair the parking lot ....
 
 
 56
 Slip op. at 4 (emphasis added).
 
 
 57
 Any overstatement of the promise in the complaint is not a proper basis for dismissing the plaintiffs' promissory estoppel claim. Instead, "recovery may be had on grounds not asserted in the complaint" ( Harbin, 308 F.2d at 750); see also Economy Housing Co. v. Continental Forest Products, 757 F.2d 200, 203 (8th Cir.1985) (reversing summary judgment and permitting reliance on express warranty although complaint alleged only implied warranty theory: "We do not bind Economy to the precise warranty theory alleged in its complaint."). Where, as here, "an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate." Stevens, 512 F.2d at 878. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley, 355 U.S. at 48.
 
 B.
 
 58
 In their moving papers below and again on appeal, McDonald's primary contention with respect to plaintiffs' promissory estoppel claim is that the evidence fails to show an agreement by the parties as to what practical steps McDonald's would have to take in order to fulfill its promise to cure the parking lot problems. I Aplt.App. VIII, tab C at 25-27; Brief of McDonald's Corporation at 21-25. According to McDonald's, absent such evidence its purported promissory statements "plainly do not constitute the sort of promise that may give rise to a promissory estoppel claim." Brief of McDonald's Corporation at 25. However, under promissory estoppel principles such exactness of detail is not demanded.
 
 
 59
 Under Colorado law, it is well-established that the promissory estoppel doctrine "should be applied to prevent injustice where there has not been mutual agreement by the parties on all essential terms of a contract, but a promise was made which the promissor should reasonably have expected would induce action or forbearance, and the promise in fact induced such action or forbearance." Vigoda v. Denver Urban Renewal Authority, 646 P.2d 900, 905 (Colo.1982) (emphasis added). Accord Kiely v. St.Germain, 670 P.2d 764, 767 (Colo.1983), (recovery for promissory estoppel "[i]s often appropriate when parties have not mutually agreed on all the essential terms of a proposed transaction"); Mooney v. Craddock, 530 P.2d 1302, 1305 (Colo.App.1974) ("[i]n order to invoke the remedy authorized by [the promissory estoppel] doctrine, it is not necessary to establish mutual agreement by the parties on all essential terms of a contract"); 4 Williston on Contracts 8:5 at 96-98 (4th ed.1992) ("many courts have indicated that the contours of the promise need not be so certain as might be necessary if the contract were one based upon consideration [and] both the existence and the scope of the promise as well as the promisee's reliance upon it will be subject to a fairly flexible standard of proof"). In fact, "[t]he ... remedy of promissory estoppel is never reached when there has been mutual agreement by the parties on all essential terms of a contract." Scott Co. of California v. MK-Ferguson, 832 P.2d 1000, 1003 (Colo.App.1991), cert.denied, 1992 Colo. LEXIS 591 (Colo. June 29, 1992).
 
 
 60
 Thus, promissory estoppel serves as the basis for the enforcement of promises which under traditional theory would be held indefinite and hence unenforceable. See Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343, 361 (1969). See also Wheeler v. White, 398 S.W.2d 93 (Tex. Sup.Ct.1965) (affirming trial court's finding that the writing was too indefinite to enforce on a conventional breach of contract theory, but reversing on the ground that the detrimental reliance occasioned by "an otherwise unenforceable promise" may present a substantial and compelling claim for relief based on promissory estoppel). The cases involving bargains that are unenforceable due to indefiniteness of language clearly demonstrate that when reliance is justifiable and serious, the promise requirement of Section 90 is not difficult to satisfy. See Henderson, supra, at 364 (citing Travelers Indemnity Co. v. Holman, 330 F.2d 142, 151 (5th Cir.1964)). Moreover, promissory estoppel is particularly appropriate in the context of franchise contracts, where the broad powers typically reserved to one or both parties to the contract generally do not meet the criteria of established consideration doctrine. See, e.g., Goodman v. Dicker, 169 F.2d 684 (D.C.Cir.1948) (finding reliance as the ground for recovery of expenses incurred in preparation to operate under a franchise which was never granted).
 
 
 61
 Here, therefore, "the defendant['s] contention that there was no evidence of a meeting of the minds on all the terms of a contract is accurate, but irrelevant[.]" Hunter v. Hayes, 533 P.2d 952, 953 (Colo.App.1975). The relevant facts "permit the application of the doctrine of promissory estoppel ... without evidence of a meeting of the minds or consideration." Id.[4]
 
 
 62
 Moreover, I am convinced there was sufficient proof of reliance for the Polittes to survive the summary judgment motion. "Justifiable reliance on the representations of another is the gist of this [promissory estoppel] action." Kiely, 670 P.2d at 767. In order to support an award of compensatory damages, the promisee's reliance must constitute "a reasonable and foreseeable detrimental change of position[.]" Id.
 
 
 63
 The evidence in this case would amply support a finding of reasonable and detrimental reliance by the Polittes on McDonald's promise to fix the Golden parking lot problems. Mr. Politte's deposition testimony shows that but for McDonald's promise, the Polittes would have instituted litigation in order to force the company to solve the problems, but McDonald's convinced the Polittes to forget about the lawsuit. I Aplt.App. VIII, tab C at 28, 56, 101. There was also proof that the Polittes decided to invest some $8,862 of their own money in the repair efforts in order to upgrade to a concrete surface on a portion of the parking lot. Id. at 109 and ex. 5. (The recurring water and soil problems, however, have caused the pavement to start cracking again. II Aplt.App. IX, tab 7 at 133.) Finally, the correspondence between the parties indicates that they viewed resolution of their Golden lot dispute as something which "should be resolved as part of the [Youngfield] settlement." I Aplt.App. VIII, tab C, ex. 2. McDonald's promise to fix the Golden parking lot problem thus became instrumental in the settlement of the Youngfield litigation.[5]
 
 
 64
 In short, the record supports a finding that the Polittes relied, in a variety of ways, on McDonald's undertaking to fix the Golden parking lot problems on a permanent basis. The evidence is sufficient that the Polittes' reliance was both reasonable and foreseeable, and thus ample support for their claim of promissory estoppel, to survive summary judgment and entitle the Polittes to trial on that claim.
 
 IV
 
 65
 Because the evidence introduced by the parties below is sufficient to support a claim of promissory estoppel by the Polittes against McDonald's, I would reverse the summary judgment for McDonald's on that claim. With respect to the summary judgment on the Polittes' negligence claim, however, I concur in the result reached by the majority, as well as in the affirmance of the rejection by the district judge of McDonald's claim for costs and attorney's fees.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 In my view, the summary judgment against the Polittes on their separate claim for negligence should be affirmed because there is not sufficient evidence presented in the summary judgment record establishing negligence on the part of McDonald's in the work done in 1984 to repair the Golden parking lot. This does not, however, defeat the separate promissory estoppel claim, which in essence asserts that McDonald's promised to do what was necessary to solve the parking lot problem even if the work in 1984 did not do so
 
 
 [3]
 If pleadings were determinative on the issues in a case, the system of notice pleading contemplated by the Federal Rules would cease to exist. "The purpose of fact pleading' ... is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery." Evans v. McDonald's Corp., 936 F.2d 1087, 1091 (10th Cir.1991). See also Conley v. Gibson, 355 U.S. 41, 48 (1957) ("simplified notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues ") (emphasis added); Fitz-Patrick v. Commonwealth Oil Co., 285 F.2d 726, 729 (5th Cir.1960) (system of notice pleading "point[s] in the direction of a trial court deciding a case on proof rather than pleading"); Anderson v. Manhattan Lighterage Corp., 148 F.2d 971, 976 (2d Cir.1945) ("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not"), cert.denied, 326 U.S. 722 (1945); 2A Moore's Federal Practice 1/28.14 at 8-74 (1993) ("[t]he legal rights of [the parties] are to be determined by the law and the facts as established in the case and not by some language of the claim' ") (quoting Kowalewski v. Pennsylvania R. Co., 141 F.Supp. 565, 569 (D. Del.1956))
 
 
 [4]
 The case principally relied on by McDonald's, Rawson v. Sears, Roebuck and Co., 554 F.Supp. 327 (D. Colo.1983), is not to the contrary. There, the district court said that none of the evidence cited by plaintiff in opposition to summary judgment "amount[ed] to a promise" and that plaintiff's opposition brief in fact did "not dispute that the contention that a promise was never made." Id. at 330
 
 
 [5]
 Each of the foregoing manifestations of reliance by the Polittes flowed from their resignation to the fact that they had to "accept that [McDonald's] knew what [it was] doing" and not argue with the company about its plan of action "because that wasn't in anybody's best interest." I Aplt.App. VIII, tab C at 35