357 So.2d 1074 (1978)
HEMISPHERES CONDOMINIUM ASSOCIATION, INC., and Public Service Mutual Insurance Company, a New York Corporation, Appellants,
v.
Sally CORBIN, As Personal Representative of the Estate of Sidney Russell Corbin, Appellee.
No. 77-789.
District Court of Appeal of Florida, Third District.
May 2, 1978.
Goodwin, Ryskamp, Welcher & Carrier, Miami, for appellants.
Snyder, Young, Stern, Barrett & Tannenbaum and William L. Rogers, North Miami Beach, for appellee.
Before HAVERFIELD, C.J., PEARSON, J., and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
The principal question presented by this appeal is whether the facts in evidence before *1075 the jury were sufficient as a matter of law to establish negligence. The complaint sought damages arising out of the claimed negligence of the defendant, a condominium association, in the operation of a swimming pool in which Mr. Corbin (the appellee's deceased) drowned. The action was brought by appellee Sally Corbin, as the personal representative of the estate of Sidney Russell Corbin, and as an individual. Defendant's answer denied negligence.
Following instructions, the jury initially returned a verdict finding for the estate in the amount of $100,000. Because the parties had stipulated that in event a verdict was returned for the estate, the damages to the estate were to be $6,212.50, the court declined to enter the verdict returned and reinstructed the jury. The jury then returned with a verdict in the estate action in the amount of $75,000 and in the wrongful death action in the amount of $25,000. The court discharged the jury and, thereafter, denied plaintiff's motion to amend and correct the verdict and interrogate the jury. The court also denied defendant's motion for judgment notwithstanding the verdict. Upon motion for new trial and remittitur, the plaintiff was required to remit $68,787.50 in the estate action as the excess over the stipulated damages to the estate. Final judgment was entered on the verdict and the defendant has appealed the judgment, assigning as error the denial of its motions for directed verdict and its motion for judgment notwithstanding the verdict. The plaintiff has filed cross-assignments of error directed to the court's denial of her motion to amend and correct the verdict.
Mr. and Mrs. Corbin rented an apartment in the condominium complex from the owner of that apartment. The Hemispheres Condominium had two pools managed by a pool manager, who, in the course of his job, would circulate back and forth between the two pools during the day. Although there were four attendants working under the manager, there was only one attendant on duty at the pool where Mr. Corbin drowned at the time of the incident. This attendant had the lifesaving responsibilities. In addition, his duties included attending to the lounge chairs, enforcing the rules and regulations of the pool deck and maintaining the pool. He also took tennis reservations, but he testified that he maintained constant surveillance of the pool.
The pool attendant was not a "lifeguard." He had been trained by the pool manager in the use of all the lifesaving equipment, which consisted of a shepherd's hook, life ring with life line attached, oxygen tank and the communication system for the rescue squad. He was not trained in the administration of artificial respiration. The association had posted signs at the pool, "Swim at your own risk."
Mr. Corbin was sixty-three years old. He was a strong swimmer and was swimming alone (to the extent that he had not gone to the pool with a companion). Many other persons were in the pool at the time. Mr. Corbin had suffered for some time from epilepsy, although all indications were that the incidents were usually nocturnal. No one saw Mr. Corbin in trouble and the record is devoid of any reason that he sank in the water. At the time of the incident, the attendant testified that he was "[s]traightening lounges at the northeast corner of the pool." He first became aware that there was a problem when a small girl informed him that "[t]here was a man at the bottom of the pool." He ran to the pool, jumped in and pulled Mr. Corbin to the surface. He was then assisted by others in getting Mr. Corbin out of the pool. At the time, Mr. Corbin was not conscious and the color of his skin was blue. After laying Mr. Corbin down on the pool deck, the attendant ran to the pool office for a breathing apparatus and notified the paramedics on the property. He then returned with the breathing apparatus and found that another residence was giving Mr. Corbin artificial respiration. He set up the oxygen equipment and immediately placed it to Mr. Corbin's face. Very soon thereafter, the paramedics came with a fully-equipped ambulance, which is provided by the condominium association. Mr. Corbin was immediately taken to a hospital, where he died a few days later. An autopsy was performed by a pathologist who *1076 testified that "... the cause of death was complications of drowning." The pathologist further testified that based upon reasonable medical probability, there was no other cause of death. It was concluded by the doctor that the period of submersion "... was probably in the range of three to five minutes."
It is not suggested that the association was an insurer of Mr. Corbin's safety. Further, we think that it is clear that the association did not have the same duty of guarding persons from harm that would be applicable to a place providing public entertainment or amusement for profit. See Rainbow Enterprises, Inc. v. Thompson, 81 So.2d 208 (Fla. 1955). The duty owed to Mr. Corbin, as a user of the pool provided by the defendant association for its members, was the same duty the association owed to its own members. Also, as a renter from an individual owner-member of the association, the deceased was owed a duty of care no higher than that owed to an association member. In effect, a member of the association is suing the association for the alleged inadequacy of its method of operation of the pool maintained by the owners for their own use.
The plaintiff has described this duty in her brief as "... a duty ... to take such precautions as to reasonably provide for his safety while swimming . ., or to provide for his rescue and medical attention within those critical few minutes necessary to prevent death." This duty is further described as a "... duty to exercise ordinary or reasonable care to see that its recreation area was reasonably safe for its residents and guests use," citing Manassa v. New Hampshire Insurance Company, 332 So.2d 34, 36 (Fla.1st DCA 1976). In that case, the court held that there was a question for the jury on the issue of the negligence of the owner of an apartment complex where an invited guest slipped and fell while playing tennis on a court maintained by the owner because of a dangerous condition of leaves on the court. While the cited case is not applicable on the facts, we think that a duty to exercise ordinary care is applicable. In Smith v. Jung, 241 So.2d 874 (Fla.3d DCA 1970), that standard was applied where the estate and the survivors of a tenant's son sued the landlord for negligence in failing to have lifesaving equipment or personnel for rescue and resuscitation.
As mentioned above, the plaintiff's case for negligence depends upon a failure of the defendant to take reasonable precautions to provide for the safety of swimmers or to provide the deceased reasonable rescue and medical attention. It is urged that the attendant should have been a professional lifeguard and that his ancillary duties may have prevented his prompt attention. We know of no case in this or any other jurisdiction that holds that a failure to provide a professional lifeguard is a failure to exercise ordinary care in the operation of a private swimming pool. In Smith v. Jung, supra, it was held that a complaint stated a cause of action when, in a drowning case, the complaint alleged the absence of lifesaving equipment and any supervisory personnel. The instant case does not come within the purview of that holding.
The plaintiff offered into evidence the following "rule" of the Department of Health and Rehabilitative Services:
"10D-5.51 Safety Recommendations. It is strongly recommended that a swimming instructor or other qualified attendant should be on duty at the poolside at all times when a pool is open to use by bathers. The attendant should be in full charge of bathing and have authority to enforce all rules of safety and sanitation and he should be trained in first aid and the use of lifesaving apparatus. Additional personnel should be provided to supervise the bathhouse facilities and inspect bathers for skin diseases, open lesions, etc., prior to entering the pool area.
"(1) Lifesaving apparatus  All swimming pools should be provided with a shepherd's hook and at least a fifteen (15) inch life saving ring with sufficient rope to reach all parts of the pool."
It is clear that this rule does not call for the presence of a person other than a "qualified *1077 attendant." We find nothing in this record, together with the inferences that a jury might legally draw, that would support a holding that the attendant's lack of "lifeguard" status was a proximate cause of Mr. Corbin's death.
The relationship of the attendant's other duties to Mr. Corbin's drowning is equally nonexistent. It cannot be said that an attendant's duty is to keep each swimmer under constant surveillance. Cf. Bolduc v. Coffin, 133 Vt. 67, 329 A.2d 655 (1974).
The plaintiff has totally failed to show any action or lack of action by the defendant which can be said to be the proximate cause of Mr. Corbin's death. Cf. Schulte v. Graff, 481 S.W.2d 596 (Mo. Ct. App. 1972). Plaintiff relies upon the right of the jury to find that there was a lack of reasonable care by the defendant to "... provide for his [Mr. Corbin's] safety while swimming in Defendant's pool, or to provide for his rescue and medical attention within those critical few minutes necessary to prevent death." We think that such a finding by a jury upon this record could be based only upon conjecture and speculation. A jury verdict may not be based solely upon conjecture and speculation. See Ephrem v. Phillips, 99 So.2d 257, 261 (Fla.1st DCA 1957), and cases cited thereat.
Having found that the court erred in failing to direct a verdict for the defendant, we need not consider plaintiff's cross-assignments of error raising the question of the court's failure to amend or correct the verdict.
Accordingly, we reverse and remand this cause with directions to enter judgment for defendant Hemispheres Condominium Association, Inc., and its insurer, defendant Public Service Mutual Insurance Company.
Reversed and remanded.
CHARLES CARROLL (Ret.), Associate Judge, dissents.