**TRAILSIDE TOWNHOME ASSOCIATION, INC., a Condominium Association doing business in Colorado, and Hughes Management, a Homeowners Association, Petitioners,**

v.

**Cindy ACIERNO, Respondent.**

**No. 93SC412.**

Supreme Court of Colorado, En Banc.

Sept. 12, 1994.

---

Levy & Lambdin, Stuart D. Morse, Scott P. Landry, Englewood, for petitioners.

Karen V. Hendrick, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

This case presents an issue concerning the duty of care owed by a townhome owners association to a townhome owner in maintaining a swimming pool located in a common area within the townhome complex. In *Acierno v. Trailside Townhome Ass'n, Inc.*, 862 P.2d 975 (Colo.App.1993), the Colorado Court of Appeals reversed the trial court's entry of summary judgment in favor of the defendants in a negligence action brought by Cindy Acierno, an owner of one of the townhomes, against Trailside Townhome Association, Inc. ("Trailside") and Hughes Management ("Hughes"), the company hired by Trailside to maintain the swimming pool. The action was based on an incident in which Acierno suffered injuries as a result of diving into shallow water in the pool. We agree that the summary judgment must be reversed but disagree with the court of appeals' analysis concerning the legal standard applicable to determine Trailside's duty of care. We therefore affirm in part, reverse in part, and remand with directions.

## I.

At the time of the incident that resulted in this litigation, Acierno was the owner of a townhome in Trailside Filing No. 5 Subdivision (the "townhome complex") located in Jefferson County, Colorado. On June 23, 1990, Acierno sustained severe head and neck injuries when she dived into a swimming pool located in a common area of the townhome complex and struck bottom. Acierno filed suit in Jefferson County District Court seeking compensatory and punitive damages against Trailside, the incorporated association whose members consisted of owners of lots in the townhome complex, and Hughes, the company hired by Trailside to provide maintenance services for the common areas within the townhome complex. She alleged that both defendants were negligent for failing to maintain the water level of

the swimming pool at an appropriate level and for failing to install a divider rope to separate the shallow end of the pool from the deep end. Acierno claimed that the negligence of the defendants caused her unknowingly to dive into water that was too shallow and incur injuries.[1]

The defendants moved for summary judgment, and the trial court granted that motion. In ruling for the defendants, the trial court found that the swimming pool was owned by Trailside as part of the common areas of the townhome complex and that Hughes was Trailside's authorized agent for the purpose of property management. The court then applied section 13–21–115, 6A C.R.S. (1987 & 1993 Supp.), the Colorado landowners liability statute. Pursuant to that statute, it held that both the defendants were "landowners,"[2] and determined that Acierno fit the definition of "licensee."[3] Applying the standard of care owed by a landowner to a licensee,[4] the trial court granted summary judgment in favor of the defendants, finding that the defendants had presented affidavits denying that they "actually knew" of the dangerous condition and that Acierno had failed to set forth specific facts showing that there was a genuine issue for trial on this essential element of her claim. *See* C.R.C.P. 56(e).

Acierno appealed, and the court of appeals reversed the trial court's judgment. Proceeding from the premise that the townhome complex is a condominium, and that therefore the owners of the individual lots are owners of undivided interests in the common areas as tenants in common, *see* § 38–33–102, 16A C.R.S. (1982), the court of appeals held that it was error to apply section 13–21–115 to determine landowner liability. "By its terms," said the court, "the statute applies only to civil actions 'brought against a landowner by a person who alleges injury occurring while on *the real property of another.'*" *Acierno*, 862 P.2d at 977 (quoting § 13–21–115(2), 6A C.R.S. (1987)). "Since ownership of the common areas in a condominium complex is vested in the individual unit owners as tenants in common, it necessarily follows that plaintiff's injuries here cannot be said to have occurred while she was using 'the property of another.'" *Id.* Accordingly, the court of appeals concluded that section 13–21–115 was not applicable and that the trial court had therefore applied an incorrect legal standard in resolving the defendants' motion for summary judgment. It reversed the summary judgment and remanded the case for rein-

1. Acierno also asserted a strict liability claim based on maintenance of a hazardous facility. The trial court dismissed this claim on the motion of the defendants. The propriety of the dismissal is not at issue on certiorari review.

2. The trial court based its determination that both defendants were landowners upon § 13–21–115(1), which provides in pertinent part:

For the purposes of this section, "landowner" includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.
§ 13–21–115(1), 6A C.R.S. (1987).

3. Under § 13–21–115(5), an entrant on land falls in one of three classifications: trespasser, licensee, or invitee. The statute provides:

As used in this section:
(a) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.
(b) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.
(c) "Invitee" means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.
§ 13–21–115(5), 6A C.R.S. (1993 Supp.).

4. § 13–21–115(3)(b) prescribes the duty owed by a landowner to a licensee:

(b) A licensee may recover only for damages caused:
(I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner *of which the landowner actually knew*; or
(II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and *of which the landowner actually knew*.
§ 13–21–115(3)(b), 6A C.R.S. (1993 Supp.) (emphasis added).

statement of the plaintiff's complaint. In so doing, it did not specify the standard to be applied by the trial court in determining any duty of care owed by Trailside and Hughes to Acierno.

We granted certiorari on the following set of issues:

Whether the court of appeals erred in concluding the association involved in this case was a condominium association. If so, what duty of care did the association owe to its members under the facts of this case? [5]

We conclude that the townhome complex is not a condominium and that a remand is necessary to determine the duty of care owed by Trailside and Hughes to Acierno.[6]

## II.

The court of appeals determined that the premises liability statute does not apply where the injured party is a co-owner of the property upon which she was injured. The court of appeals assumed that the townhome complex where Acierno resided is a condominium. It pointed out that a condominium is characterized by individual ownership of each unit together with common ownership of the common elements.[7] It then concluded that because the townhome complex is a condominium, Acierno was a co-owner of the common areas, including the swimming pool.

■ The court of appeals erred in holding that the townhome complex is a condominium. Condominium ownership in Colorado is recognized and governed by statute. *See* Condominium Ownership Act, §§ 38–33–101 to –113, 16A C.R.S. (1982 & 1993 Supp.). "[T]he very definition of a condominium requires the existence of an undivided interest in common elements." *Cherry Hills Resort Dev. v. Cherry Hills,* 790 P.2d 827, 830 (Colo. 1990); *accord* § 38–33–102, 16A C.R.S. (1982); *see Pleet v. Valley Greene Assoc.,* 371 Pa.Super. 530, 538 A.2d 567, 569 (1988) (the definition of condominium makes clear that unless ownership interest in the common elements is vested in the unit owners, the project is not a condominium); *see also Country Greens Village One Owner's Ass'n v. Meyers,* 158 Ga.App. 609, 281 S.E.2d 346 (1981) (where development name did not include the word "condominium," and developer's declaration placed title to common areas in the association, project did not comply with condominium act and was therefore not a condominium). " 'Thus ... if the common elements were owned by an association in which each unit owner was a member, the project would not be a condominium'." *Pleet,* 538 A.2d at 569 (quoting a comment to the Uniform Condominiums Act, § 1–103, 7 U.L.A. 434 (1980)).[8]

■ Nothing in the documentation submitted in connection with the defendants' motion for summary judgment contains the word "condominium" or otherwise suggests an intent to create condominium ownership. The common areas of the townhome complex are not co-owned by the individual members.

**5.** We also granted certiorari on an additional issue based on the premise that the townhome complex is a condominium. Because we determine that it is not, we do not reach the additional issue.

**6.** No suggestion is presented in this proceeding that any difference exists between any duty of care owed by Trailside to Acierno and any such duty owed by Hughes as its agent. For purposes of this certiorari review we assume that there is no such distinction.

**7.** § 38–33–102, 16A C.R.S. (1982), a part of the Condominium Ownership Act, reads in pertinent part:

Condominium ownership of real property is recognized in this state.... [S]uch ownership *shall be deemed to consist of a separate estate in an individual air space unit of a multi-unit property together with an undivided interest in*

*common elements.* The separate estate of any condominium owner of an individual air space unit and his common ownership of such common elements as are appurtenant to his individual air space unit by the terms of the recorded declaration are inseparable for any period of condominium ownership that is prescribed by the recorded declaration....
(Emphasis added.)

**8.** The Colorado Common Interest Ownership Act, §§ 38–33.3–101 to –319, 16A C.R.S. (1993 Supp.), adopted in 1991, also provides that "[a] common interest community is not a condominium unless the undivided interests in the common elements are vested in the unit owners." § 38–33.3–103(a). That act, however, is not applicable to the present case because the events at issue preceded adoption of the act.

Rather, these areas are wholly owned by Trailside. This is made clear by the copies of the plat and portions of the Declaration of Covenants, Conditions, and Restrictions for Trailside Filing No. 5 (the "Declaration") submitted by the defendants in support of their motion for summary judgment. The Declaration states in Article IV, section 3, that title to the common area of the townhome complex will be conveyed by the developer to Trailside "prior to the conveyance of the first lot." In addition, Article I, section 3, of the Declaration defines "common area" as "all of the real property including the improvements thereto owned by [Trailside] for the common use and enjoyment of the Owners." Thus, Trailside, a non-profit corporation, is clearly the intended owner of the common areas. The trial court, without discussion, recognized this in its order for summary judgment. Accordingly, the court of appeals' co-ownership analysis was incorrect.[9] *See generally* Amy L. DeLaplace, *Background and Definitions*, 11 The Colo. Lawyer 2737, 2741–42 (1982) (distinguishing condominiums from other forms of ownership such as townhomes with homeowners associations).

We next address the manner of determining the existence and nature of any duty of care owed by Trailside and Hughes to Acierno as the owner of a lot in the townhome complex.

### III.

The district court applied the landowner liability statute to determine the duty owed by Trailside and Hughes to Acierno. The relevant provisions of the current Colorado landowner liability statute were enacted in 1990 and reflect an intent "to promote a state policy of responsibility by both landowners and those upon the land as well as to assure that the ability of an injured party to recover

is correlated with his status as a trespasser, licensee, or invitee." § 13–21–115(1.5)(a), 6A C.R.S. (1993 Supp.). In litigation to which the statute applies, the judge has the authority to "determine whether the plaintiff is a trespasser, a licensee, or an invitee, in accordance with the definitions set forth in subsection (5) of this section." § 13–21–115(4), 6A C.R.S. (1993 Supp.). The trial court held that Acierno was a "licensee" under the basic definition of that term [10] because she was on the property "with the consent of [Trailside]," and "she was at the swimming pool for her own convenience or to advance her own interests pursuant to the landowner's permission or consent." The trial court held that the defendants had not breached the standard of care owed to a licensee and therefore granted summary judgment in favor of the defendants.

The court of appeals, on the other hand, held that the landowner liability statute was inapplicable, based on the erroneous conclusion that Acierno was the owner of an undivided interest in the common elements, including the swimming pool. *Acierno*, 862 P.2d at 977. We reject the court of appeals' analysis because of the erroneous premise from which it proceeds but also conclude that the trial court failed to take full account of the relationship between Trailside and Acierno in applying the landowner liability statute and treating her as a licensee.

Trailside is a nonprofit corporation whose members are owners of lots in the townhome complex. Trailside was incorporated by the developer for purposes including creation of "an entity to which to delegate and assign the powers of maintaining and administering the common areas...." Declaration, p. 1. The common areas are "owned by [Trailside] for the common use and enjoyment of the Owners." Declaration, Art. I, sec. 3. Each

---

**9.** The court of appeals' error is hardly surprising. Acierno alleged in her complaint that the townhome complex is a condominium. The defendants admitted this allegation. The record is replete with references to the development as a condominium. The caption of this case in the court of appeals and in this court, as derived from the briefs of the parties, has perpetuated this misdesignation. It is clear, however, from the documents submitted by the defendants in

support of their motion for summary judgment that the townhome complex was not created under the Condominium Ownership Act and incorporates legal relationships inconsistent with condominium ownership.

**10.** The three categories of entrants on land—trespasser, licensee, and invitee—are defined in § 13–21–115(5), quoted *supra* at note 3.

owner of a lot has the right to use of recreational facilities and may delegate the owner's "right of enjoyment to the Common Area and facilities" to certain designated persons. Declaration, Art. IV, §§ 1(c), 2. The Declaration, therefore, creates complex relationships between the owners on the one hand and Trailside on the other. A central purpose of the creation of Trailside was to create a means for maintenance of common areas for the benefit of the lot owners.

The landowner liability statute delineates duties owed by landowners to third persons who enter on the land under circumstances that cause those persons to be categorized as trespassers, licensees, or invitees. § 13–21–115(3), 6A C.R.S. (1993 Supp.). The definitions of those terms have no application to the relationship between Trailside and the owners, in that the owners have a continuing right independent of association consent to make use of the common areas by reason of their ownership of lots in the townhome complex, whereas trespassers, licensees, and invitees have no right to enter in the absence of consent. *See* § 13–21–115(5), 6A C.R.S. (1993 Supp.), defining "trespasser," "licensee," and "invitee," quoted in full at n. 3 *supra.*[11] For this reason, we conclude that the landowner liability statute is inapposite and do not accept the trial court's mode of

analysis—first characterizing Acierno as a "licensee," and then applying the landowner liability statute to determine the nature of the duty owed by Trailside and its agent Hughes.

The determinations of the nature and extent of duties of care owed by property owner associations, whether condominium associations or townhome associations, to owners of property within a development, and the consequences flowing from such determinations, are complex and difficult, and have far reaching consequences. *See generally* Eric T. Freyfogle, *A Comprehensive Theory of Condominium Tort Liability,* 39 Univ. of Florida L.Rev. 877 (1987). In resolving issues of this kind, courts have adopted various approaches, and no consensus emerges from the cases.[12]

We conclude that to the extent that the provisions of the operative documents creating the townhome complex and the association prescribe the duties of the association to the townhome owners and are consistent with public policy, those provisions control. *See Jefferson County School District R–1 v. Justus,* 725 P.2d 767, 769–72 (Colo.1986) (discussing duties imposed by law solely on the basis of the relationship between the parties, and the relationship of assumed duties to claims of negligence). These operative docu-

**11.** Characterization of entrants upon land as trespassers, licensees, or invitees is based on the existence and nature of landowner consent to entry as well as the purpose of the entry. § 13–21–115(5), 6A C.R.S. (1993 Supp.).

**12.** Some cases have held that homeowners associations have the same duty to owners with respect to common areas as a landowner owes to a tenant. *E.g., Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573 (1986) (condominium association owed same duty to unit owner to provide adequate security measures for common areas to protect against criminal acts as would be owed by a landowner to a tenant); *Moody v. Cawdrey & Associates,* 6 Haw.App. 355, 721 P.2d 708, 713 (1986) (same); *see Hemispheres Condominium Assoc., Inc. v. Corbin,* 357 So.2d 1074, 1076 (Fla.App.1978) (duty owed by condominium association to unit owners analyzed by analogy to duty owed by landlords to tenants). One court has held that the duties of associations to owners are to be determined by the association's bylaws. *Wescott v. Burtonwood Manor Condo. Ass'n Bd. of Managers,* 743 S.W.2d 555, 558 (Mo.App.1987) (duties of condominium association to unit owners limit-

ed to those included in association bylaws and state statutes). Another has observed that an association may undertake duties not imposed by common law by agreement with the unit owners. *Schoondyke v. Heil, Heil, Smart & Golee, Inc.,* 89 Ill.App.3d 640, 44 Ill.Dec. 802, 804–05, 411 N.E.2d 1168, 1170–71 (1980) (condominium association assumed a duty of snow removal not imposed by common law by reason of agreement contained in condominium declaration and association bylaws). Yet another court has suggested the applicability of common law principles concerning duties of possessors of land to determine the duty of a condominium association as possessor of a sewer line in a common area to a unit owner as a person outside of the land. *Smith v. King's Grant Condominium,* 640 A.2d 1276 (Pa. 1994). This list is by no means comprehensive, but is illustrative of the variety of approaches to development of standards of homeowner association duties to unit owners in courts across the land. *See generally* 6 Patrick J. Rohan, Real Estate Transactions §§ 7A.06[1][a], [b], 10.04[1] (1992).

ments could establish a duty giving rise to tort obligations as well as create contractual obligations. *See, e.g., Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1043–44 (Colo. 1983); *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313, 317–18 (Colo. 1980). A common law duty of care also may arise as a result of the association's control over common areas including the swimming pool—a situation analogous to the duty owed by a landlord to a tenant. *See, e.g., Van Schaack & Co. v. Perkins,* 129 Colo. 567, 569–70, 272 P.2d 269, 270 (1954) (stating that a landlord who retains control of property for the use and benefit of all tenants is under a duty to exercise reasonable care to keep those areas in a safe condition).[13] Additionally, the Restatement (2d) of Torts § 323 (1965) provides a theory under which a tort action may arise when one negligently performs an undertaking to render services either gratuitously or for consideration. *See Justus,* 725 P.2d at 770.

To the extent that the duty issue cannot be resolved by analysis of the documents alone, we conclude that our general negligence principles provide a proper supplementary basis for determining the existence and scope of any duty owed by Trailside to the townhome owners. The determination of whether a person has a duty to act or refrain from acting to avoid injury to others is a question of law for a court. *E.g., Peterson v. Halsted,* 829 P.2d 373, 379 (Colo. 1992); *Smith v. City & County of Denver,* 726 P.2d 1125, 1127 (Colo.1986). Such a determination involves weighty policy considerations requiring a court to consider a number of different factors. *Justus,* 725 P.2d at 769. Among those factors are " 'the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden

upon the actor.' " *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987) (quoting *Smith,* 726 P.2d at 1127). This list is not exhaustive and permits consideration of "other factors that may become relevant based upon the competing individual, public and social interests implicated in the facts of each case." *Whitlock,* 744 P.2d at 57. "The standard of care that must be met in order to satisfy a recognized duty and thereby avoid breach is that of reasonable care in light of the apparent risk." *Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo.1992).

We are persuaded that the foregoing general principles provide an appropriate framework within which the relevant considerations for determining the existence and scope of any duty owed by Trailside to Acierno and not defined in the townhome documentation can be identified and weighed. The documentation before us, however, does not permit a fully informed determination of the nature of Trailside's duties, and that of its agent Hughes, to Acierno with respect to maintenance of the swimming pool where Acierno was injured. Only selected pages of the Declaration were presented in support of the defendants' motion for summary judgment. The pages submitted suggest that the description of the rights of the owners and the obligations of Trailside with respect to the common areas are more fully described in the omitted pages. Other documents, such as the articles of incorporation and by-laws of Trailside, may be relevant as well. *See generally Wescott,* 743 S.W.2d at 558. A remand is necessary, therefore, to permit the district court to delineate the nature and extent of Trailside's duty of care to Acierno and to permit any necessary further determinations of the issues of breach of duty and damages.

IV.

We affirm the judgment of the Colorado Court of Appeals insofar as it reverses the

---

**13.** At least two theories have been offered to support the imposition of tort liability on a lessor arising out of an agreement to repair prior to actually undertaking repairs. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 63, at 444 (5th ed. 1984) ("Prosser"). First, because the lessor retained control of the area, the lessor remains responsible for maintaining it in a safe condition for the benefit of those who use it. *Id.* Second, given the relationship between the lessor and lessee, the lessee has a special reason to rely upon the promise. *Id. See also Justus,* 725 P.2d at 770. Moreover, policy considerations place "the responsibility for harm caused by disrepair upon the party best able to bear it, and most likely to prevent the injuries, at least where he has expressed willingness to assume responsibility." Prosser § 63, at 444.

summary judgment entered by the district court, and we remand this case to the court of appeals to be returned to the district court for reinstatement of the negligence claim and for further proceedings consistent with the views expressed in this opinion.

Chief Justice ROVIRA, specially concurs:

The majority concludes that the townhome complex is not a condominium because the individual lot owners do not co-own the common areas of the townhome complex as required under the statutory definition of a condominium set forth in section 38–33–102, 16A C.R.S. (1982). I agree with that conclusion. I also initially agree with the majority's conclusion that section 13–21–115, 6A C.R.S. (1993 Supp.) is inapplicable. I write separately however to express my concern that this conclusion may be inaccurate depending upon the contents of the Declaration of Covenants, Conditions, and Restrictions for Trailside Filing No. 5 (the "Declaration"), by-laws and rules of the Association which are not before us.

The Declaration appears to be a document of nineteen pages in length, however, only pages one, two, four and nineteen were submitted to the trial court. Neither was a copy of the by-laws or rules of the Association filed with the court. As such, the ability to make a precise determination as to the relationship between the Association and the lot owners is speculative at best.

Contrary to the majority's outright rejection of section 13–21–115, I would leave open the possibility that the Colorado landowner liability statute may apply depending on the wording of the missing documents.

The majority bases its conclusion upon the finding that "the owners have a continuing right independent of association consent to make use of the common areas by reason of their ownership of lots in the townhome complex, whereas trespassers, licensees, and invitees have no right to enter in absence of consent." Maj. Op. at 1202.

As recognized by the majority, Article I, section 3 of the Declaration clearly states that the common areas are "owned by [the Association] for the common use and enjoy-

ment of the Owners." The Declaration further provides that title to the common area of the townhome complex will be conveyed by the developer to the Association. Declaration, Art. IV, § 3.

The Declaration grants each owner of a lot the ability to delegate their "right of enjoyment to the Common Area and facilities" to certain persons pursuant to the By–Laws. Declaration, Art. IV, §§ 1(c), 2.

Although right to use of the common areas is granted by virtue of owning a townhome, Article III, section 1(c) of the Declaration grants the Association the right to suspend an owner's right to use of the recreational facilities. As such, the right to use these areas may be taken away for a certain period of time and under certain circumstances. Article III of the Declaration specifies further information relating to the common areas of the complex. However, because this section is incomplete, it cannot be determined what impact this may have upon the majority's conclusion that section 13–21–115 does not apply.

It is obvious that further information concerning the relationship between the Association and the lot owners exists within the missing documents. It is also certain that duties imposed contractually upon the owners (i.e. through rules, by-laws or declarations) by the Association may increase the base duty owed to the lot owners by the Association.

However, because the record is incomplete as to the Declaration, by-laws and other rules of the Association, it is inappropriate for this court to determine with absolute certainty the duty owed by the Association to the owners.

Therefore, I would remand to the trial court with directions to determine the duty owed to Acierno under the standard set forth in the majority opinion, leaving open the possibility that the Colorado landowner liability statute may apply.